# HEATHER C. HOFFMAN

125 Greenwood Drive, #3419 Carolina Place, Hilton Head, South Carolina  29928
Phone:  (Cell) (843) 290-6616
E-mail:  hhoffman444@hotmail.com

PLAINTIFF(S):

    HEATHER C. HOFFMAN

        VS.

DEFENDANT(S):

    (COUNTY OF KENOSHA)
    ALLAN K. KEHL
    ALAN SWARTZ
    MAUREEN SWARTZ
    MICHAEL J. SERPE
    DEBBIE HERTZBERG-SERPE
    DIANE YULE
    ROBERT RIEDL
    DENNIS SCHULTZ
    KENOSHA CIRCUIT COURT

**08-C-0041**

    FAMILY COURT COMMISSIONER JAMES FITZGERALD
    CLERK OF COURT GAIL GENTZ AND/OR ACTING CLERK OF COURT
    CITY OF KENOSHA POLICE DEPARTMENT
    CHIEF OF POLICE DANIEL WADE
    KENOSHA COUNTY SHERIFF'S DEPARTMENT
    SHERIFF DAVID BETH
    CHIEF DEPUTY CHARLES SMITH
    THOMAS W. ANDERSON, JR.
    DR. LEILANE U. STA ROMANA, M.D.
    FRED SCHLATER
    LENA SCHLATER
    OTTO NELSON & SONS/AGENTS FOR UNITED VAN LINES
    PAUL KRESSE
    JULIE BOYNTON-PASKIEWICZ
    "JOHN DOE DEFENDANTS"

## I. PARTIES

1. Plaintiff Heather C. Hoffman is a citizen of the United States who resides at 125
   Greenwood Drive, #3419 Carolina Place, Hilton Head Island, South Carolina.

2. Defendant Allan K. Kehl is the Kenosha County Executive of the County of Kenosha, Wisconsin, which is located in the Kenosha County Administration Building, 1010-56th Street, Kenosha, Wisconsin. As the head elected official and, thus, representative of Kenosha County government, Mr. Kehl is ultimately responsible for leadership, direction and oversight of Kenosha County operations. Mr. Kehl is also responsible for the actions of his county department and his officers, including supervisor negligence: negligent supervision, failure to train, failure to direct, failure to legitimately investigate internal and external complaints about his department heads and their abuse of authoritative power, and intentional failure and neglect to protect Plaintiff from civil and criminal retaliatory harassment, both within and outside of the Kenosha County work environment after appraised of the situation on or before October of 2002. Mr. Kehl, at all times pertinent to this pleading, acted under color of state law and color of office as the County Executive of Kenosha County, and acted within and outside of the scope of his position. Mr. Kehl is also sued in his individual capacity for his actions and omissions, by integrity of his authoritative position as head, elected official of Kenosha County Government.

3. Defendant Alan Swartz is and/or was the Assistant Finance Director/Budget Manager for the County of Kenosha, Wisconsin. Mr. Swartz is responsible for providing assistance to the finance director and overseeing/managing the county budget. Mr. Swartz, at all times pertinent to this legal pleading, acted under color of state law and color of office as the Assistant Finance Director/Budget Manger for the County of Kenosha, and acted within and outside of the scope of his position. Mr. Swartz is also sued in his individual capacity for his actions and omissions, by integrity of his authority as Assistant Finance Director/Budget Manger of Kenosha County.

4. Defendant Maureen Swartz is married to Mr. Alan Swartz. Mrs. Swartz, to cover up and protect her husband, Al Swartz, from charges of sexual harassment and actual overt physical assault on Plaintiff, was instrumental in helping to orchestrate the civil/criminal harassment against Plaintiff.

5. Defendant Michael J. Serpe was the Administrative Assistant of the Kenosha County Executive for the County of Kenosha, Wisconsin. Mr. Serpe was personally and professionally recommended to his position by Allan K. Kehl, confirmed by the Kenosha County Board of Supervisors, and, thus, appointed to his position to provide leadership and guidance to Kenosha County Executive Allan K. Kehl. Mr. Serpe, at all times pertinent to this legal pleading, acted under color of state law and color of office as administrative assistant to the Kenosha County Executive, and acted within and outside of the scope of his position. Mr. Serpe is also sued in his individual capacity for his actions and omissions, by integrity of his authoritative position as second-in-charge to the Kenosha County Executive.

6. Defendant Debra Hertzberg-Serpe is the Chief Executive Officer of the Visiting Nurses Association in Kenosha, Wisconsin. Mrs. Hertzberg-Serpe is married to Mr. Michael Serpe. Mrs. Hertzberg-Serpe, to cover up and protect her husband, Michael Serpe, from charges of sexual harassment and demeaning conduct in the workplace, was instrumental in helping to orchestrate the civil/criminal harassment against Plaintiff.

7. Defendant Diane Yule is and/or was Assistant Personnel Director for the County of Kenosha, Wisconsin. Ms. Yule is responsible for adhering to and enforcing Kenosha County policies and procedures. Ms. Yule's sister, Carla Ponce, worked under Plaintiff's direction for a few years prior to Ms. Ponce's official hire and, thus, departure to another department. Ms. Yule, at all times pertinent to this complaint, acted under color of state law and color of office as Assistant Personnel Director of Kenosha County Government, and acted within and outside of the scope of her position. Ms. Yule is also sued in her individual capacity for her actions and omissions, by integrity of her position as then-Assistant Director of Personnel for Kenosha County Government.

8. Robert Riedl is Personnel Director for the County of Kenosha, Wisconsin. Mr. Riedl is responsible for adhering to and enforcing compliance of Kenosha County policies and procedures. Mr. Riedl, at all times pertinent to this legal pleading, acted under color of law and color of office as Interim Personnel Director and Senior Personnel Analyst of Kenosha County Government, and acted within and outside of the scope of his position. Mr. Riedl is also sued in his individual capacity for his actions and omissions, by integrity of his position as Interim Personnel Director and Senior Personnel Analyst of Kenosha County Government.

9. Defendant Dennis Schultz is the Director of the Kenosha County Department of Health and Human Services for Kenosha County. Mr. Schultz has misused his authoritative position as director of both the Division of Health and the Kenosha County Division of Child Support Enforcement in furtherance of the vendetta of Kenosha County. Mr. Shultz, at all times pertinent to this legal pleading, acted under color of law and color of office as Director of the Department of Health and Human Services, and acted within and outside of the scope of his position. Mr. Schultz is also sued in his individual capacity for his actions and omissions, by integrity of his position of Director of the Kenosha County Department of Health and Human Services.

10. Public officers of the Kenosha Circuit Court adversely used their entrusted positions of authority and discretion to harass, hinder, impede, and obstruct Heather C. Hoffman's U.S. Constitutional protected rights, with malicious intent to retaliate against Ms. Hoffman for making charges against Kenosha County administrators.

11. Defendant Family Court Commissioner James Fitzgerald is an appointed and and sworn judicial officer of the Kenosha County Family Court. Commissioner Fitzgerald is responsible for presiding over ethical, impartial and unbiased judicial hearings and rulings, in compliance to local, state and federal laws and the Wisconsin State and United States Constitution. Commissioner Fitzgerald, at all times pertinent to this complaint, acted outside of his official capacity as a sworn officer of the court, by using his family court room as a retaliatory weapon against Heather Hoffman, under false pretenses, in furtherance of fraudulent scheme to inflict irreparable harm and injury to Heather Hoffman and her two children, including covering up for and concealing criminal evidence.

12. Defendant Gail Gentz is the Clerk of Court for Kenosha County Circuit Court, located at the Kenosha County Courthouse, 912 – 56th Street, Kenosha, Wisconsin. An elected public official and sworn officer of the court, Ms. Gentz is ultimately responsible for securing and protecting the authenticity and integrity of court records entrusted in her possession. Ms. Gentz, at all times pertinent to this complaint, acted under color of state law and color of office as the Clerk of Court for Kenosha County, and acted within and outside of the scope of her position. Ms. Gentz is also sued in her individual capacity for her actions and omissions, by integrity of her authoritative position as Clerk of Court for Kenosha County.

13. Defendant Daniel Wade is the Chief of Police for the City of Kenosha Police Department, located in the Public Safety Building at 1000 – 55th Street, Kenosha, Wisconsin. A sworn law enforcement officer of the City of Kenosha Police Department, Mr. Wade is entrusted with the professional responsibility of serving and upholding the U.S. Constitution, enforcing law and equal application of law to all citizens of the community, and is ultimately responsible for the actions of his department and his officers. Chief Wade, at all times pertinent to this legal pleading, acted under color of state law and color of office as Police Chief of the City of Kenosha, and acted within and outside of the scope of his authoritative position. Chief Wade is sued in his individual capacity for his actions and omissions, by integrity of his authoritative, entrusted position as Chief of Police for the City of Kenosha, Wisconsin.

14. Defendant David Beth is the Sheriff of Kenosha County, Wisconsin, located in the Public Safety Building at 1000 – 55th Street, Kenosha, Wisconsin. As an elected official and sworn law enforcement officer, Mr. Beth is entrusted with the professional responsibility of serving and upholding the U.S. Constitution, enforcing law and equal application of the law to all citizens of the community, and is ultimately responsible for the actions of his department and his officers. Sheriff Beth, at all times pertinent to this legal pleading, acted under color of state law and color of office as Sheriff of Kenosha County, and acted within and outside of the scope of his authoritative position. Sheriff Beth is sued in his individual capacity for his actions and omissions, by integrity of his authoritative, entrusted position as Sheriff of Kenosha County, Wisconsin.

15. Chief Deputy Charles Smith is the Chief Deputy of the Kenosha County Sheriff's Department, Kenosha, Wisconsin, located in the Public Safety Building at 1000 – 55th Street, Kenosha, Wisconsin. Deputy Smith is an assistant to the Sheriff of Kenosha County, and, as a sworn law enforcement officer, Mr. Smith is entrusted with the professional responsibility of serving and upholding the U.S. Constitution, enforcing law and equal application of the law to all citizens of the community, and is also responsible for the actions of his department and his officers. Deputy Smith, at all times pertinent to this legal pleading, acted under color of state law and color of office as Chief Deputy of Kenosha County, and acted within and outside of the scope of his authoritative position. Deputy Smith is also sued in his individual capacity for his actions and omissions, by integrity of his authoritative, entrusted position as Chief Deputy of Kenosha County, Wisconsin.

16. Defendant Thomas W. Anderson, Jr., is a divorce attorney for Anderson and Anderson, SC, located at 5401 – 60th Street, Kenosha, Wisconsin. As a sworn officer of the court and Wisconsin State Bar Association, Mr. Anderson is ethically bound to adhere to the Wisconsin State Supreme Court Rules of Professional Conduct for Attorneys pertinent to ethics, integrity, honesty and confidentiality in serving his clients and his profession as defined by the Code of Honor. Mr. Anderson breached this code of honor by adversely using his professional position to act in furtherance of fraudulent scheme to inflict financial damage and injury to Plaintiff, including bodily injury, through intentional misrepresentations and omissions of relevant facts in legal documentation and paperwork of which comprises unethical, disingenuous legal representation.

17. Defendant Dr. Leilane U. Sta Romana, M.D., is a licensed physician with the State of Wisconsin, who conspired to jeopardize her patient's health, Heather C. Hoffman, for political purposes.

18. Defendant Fred Schlater is a licensed real estate and business owner of the State of Wisconsin, Coldwell Banker Real Estate One, 6809 Green Bay Road, Kenosha, Wisconsin, who adversely used his license and his business in furtherance of scheme of action to defraud Plaintiff of her property through fraudulent representation in real estate contract listing and subsequent offers to purchase Plaintiff's property, thereafter, constituting fraud.

19. Defendant Lena Schlater is a licensed real estate broker and business owner of the State of Wisconsin, Coldwell Banker Real Estate One, 6809 Green Bay Road, Kenosha, Wisconsin, who adversely used her license and her business in furtherance of scheme of action to defraud Plaintiff of her property through fraudulent representation in real estate contract listing and subsequent offers to purchase Plaintiff's property, thereafter, constituting fraud.

20. Defendant Otto Nelson & Sons/Agents for United Van Lines, 6203 – 28th Avenue, Kenosha, Wisconsin, acted in furtherance of fraudulent scheme of action, constituting an act of racketeering, across state lines, by using his business and contractual business association with Heather C. Hoffman to defraud Plaintiff of her property via tangible damage and injury to Plaintiff's property specific to handling of and fraudulent representation and/or misrepresentation of stated facts specific to packaging, transporting, relocating and inadequate space of storing of property and furnishings.

21. Defendant Paul Kresse, 3402 – 88th Street, Kenosha, Wisconsin, is a contractor that Plaintiff hired in "good faith" to perform extensive home improvements prior to listing of Plaintiff's property. Mr. Kresse entered into this contract with Plaintiff with malicious intent in furtherance of retaliatory fraudulent scheme of action to inflict financial damage and injury to Plaintiff, including bodily injury.

22. "John Doe Defendants", are those defendants still unnamed and unknown at the time of filing of this cause of action.

## II. PREVIOUS LAWSUITS

   A. Heather C. Hoffman will be filing a lawsuit specifically related to this lawsuit in the U.S. District Court of Charleston, South Carolina.

## III. JURISDICTION AND VENUE

23. Pursuant to Title 28 U.S.C. Sec. 1331, this United States District Court of Milwaukee, Wisconsin, has original jurisdiction as this is a civil action arising under deprivations of the Constitution and laws of the United States.

24. Pursuant to Title 28 U.S.C. Sec. 1343 (a) (1) (2) (3) (4), jurisdiction of this court is authorized by law to be imposed by Plaintiff.

25. Pursuant to Title 28 U.S.C. Sec. 1391 (b) (2) (c) (e) (1) (2), venue of the United States District Court of Milwaukee, Wisconsin, is applicable in this civil action.

26. Pursuant to Title 18 U.S.C. Section 1964, Plaintiff has legal standing in this U.S. District Court of Milwaukee, Wisconsin, since Plaintiff has been injured in her business and property by reason of a violation of Title 18 U.S.C. Section 1962 (c) (d).

27. Pursuant to Title 18 U.S.C. Section 1965 (a) (b) (c) (d), venue and process of the United States District Court of Milwaukee, Wisconsin, is applicable in this civil action.

## III. NATURE OF CASE

28. This complaint originated from defendants' deliberate, intentional and willful and unlawful deprivations of Plaintiff's U.S. Constitutional protected and guaranteed rights, including the First, Fourth, Eighth and Fourteenth Amendments, acting under color of law, in violation of Title 42 U.S.C. Section 1983.

29. These intentional deprivations, committed in conspiracy, by an agreement and a meeting of the minds, between one or more defendants', including those yet not named and hereby referred to as "John Doe Defendants", acting under color of law, with specific intent to intentionally and willfully deprive Plaintiff of her First, Fourth, Fifth, Eighth and Fourteenth Amendment rights, to impede, hinder and obstruct the due course of justice, is actionable under Title 42 U.S.C. Section 1985 (2); Plaintiff belongs to a special class of citizens as she is a woman, a victim/informant/witness of unlawful, overt predicate acts of civil and criminal retaliatory harassment, and Plaintiff is and was medically diagnosed as having a physical disability as referenced under Title I of the Americans with Disabilities Act of 1990.

30. Each of these defendants' acted in concert, through a meeting of the minds, under color of law, with specific intent and willful purpose to impede, hinder and obstruct and/or defeat, the due course of justice, in willful deprivation of Plaintiff's U.S. Constitutional federally protected rights, with specific intent to deny to Plaintiff equal protection of the laws, in violation of the First and Fourteenth Amendments, and thus inflict irreparable injury to Plaintiff's person, property and business, including bodily injury, in retaliation for Plaintiff making a charge opposing discriminatory practices in the Kenosha County work environment in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Americans with Disabilities Act of 1990; reporting the possible commission of a felony to law enforcement officers and subsequent authoritative figures, possibly directly attributable to those engaging in conduct against Plaintiff constituting a "hostile working environment"; for providing both verbal and written complaints to the U.S. Equal Employment Opportunity Commission; for providing testimony against this employer in an official hearing before Administrative Law Judge John C. Gelhard, State of Wisconsin, Department of Workforce Development, Division of Unemployment Insurance, on April 21, 2004; and in retaliation for Plaintiff's relentless pursuit, as afforded to her under the First Amendment, of continuous petition of government agencies for a redress of grievances, pertinent to the following deprivations, presumably under color of law, minus procedural and substantive due process and equal protection of the laws prior to deprivation of life, liberty and property and intrusive violation of privacy rights and law, in violation of the Fourth Amendment. This is actionable under Title 42 U.S.C. Section 1985 (2).

31. One or more of these defendants', witnessing and fully cognizant of the wrongs committed against Plaintiff, having a sworn duty to protect and defend the U.S. Constitution, and having the ability to prevent or correct the wrongs being committed, did consistently, willfully refuse to correct (willful blindness) or report said wrongs as required by law and their oath of office, and/or conspired to advance or conceal the deprivations herein enumerated by doing so intentionally, willfully and with a high knowledge and responsibility of the law and therefore is actionable under Title 42 U.S.C. Section 1986.

32. The overt retaliatory predicate acts committed by defendants, with known ties and association to racketeering enterprises and/or organized crime, against Plaintiff in violation of federal civil rights statutes constitutes a major conspiracy to commit irreparable injury and damage to Plaintiff's person, property and business, including bodily injury, in conspired deprivation of U.S. Constitutional protected rights with intent to impede, hinder and obstruct the due course of justice, under color of law, presumably under falsified charges and/or misconstrued information, minus substantive and procedural due process, rises to the level of and constitutes "racketeering activity" as defined under Title 18 U.S.C. Section 1961 (B) of the Rackeetering Influenced and Corrupt Organizations Act, hereby referred to as "RICO", more specifically, Title 18 U.S.C. Section 1513 (b) (2) (e); Title 18 U.S.C. Section 1341; Title 18 U.S.C. Section 1343; Title 18 U.S.C. Section 1344 (2); Title 18 U.S.C. Section 1028 (a) (7); Title 18 U.S.C. Section 1512 (2) (A) (B) (i) (C) (b) (1) (2) (A) (c) (1); and Title 18 U.S.C. Section 1962 (c) (d).

33. Pursuant to Title 18 U.S.C. Section 1961 (4), more than one of the defendants constituting an "enterprise" and/or "association in fact" enjoined for the specific intent, purpose and causation, across state lines, to do irreparable harm and injury to Plaintiff's business and property, including bodily injury, through a continuous, open-ended pattern of racketeering activity, as defined under Title 18 U.S.C. Section 1961 (B), with similar intent, purpose and causation to cause irreparable harm and injury, involving the same victim, over a prolonged, sustained period of time (2002 through present time of 2008) and constituting more than two separate predicate acts of retaliation, in conspired deprivation of U.S. Constitutional protected rights, under color of law, in furtherance of fraudulent scheme, plan of action and/or objective, to defraud Plaintiff of the intangible right to honest services.

34. Intentional infliction of emotional distress primarily based on the entirety of Defendants actions under the State of Wisconsin common law statute constituting outrageous, extreme and heinous conduct of which shocks the conscience and decency of a reasonable person. Conduct that is so excessively, maliciously shocking to one's conscious that Plaintiff has sustained direct, significant, tangible irreparable injury to her person, property and business, including bodily injury, due to the intentional infliction of emotional distress, in conspired deprivation of U.S. Constitutional protected rights, and, as such, as a direct consequence of, result of and/or causation of the totality of these actions taken on or before October of 2002,

through present time of January of 2008, has applied for temporary disability with the United States Social Security Administration, Port Royal, South Carolina.

35. Plaintiff herein asks the U.S. District Court of Milwaukee, Wisconsin, to please incorporate the entirety of the legal suit filed in the U.S. District Court of Charleston, South Carolina, as the causes of action are directly related and a continuation of the retaliatory overt predicate action, taken across state lines, in furtherance of fraudulent scheme and/or objective to adversely interfere in Plaintiff's person, property and business, through intrusive violation of privacy rights and laws, under color of law, and in conspired deprivation of U.S. Constitutional protected rights, to defraud and inflict irreparable damage and injury to Plaintiff and her family.

## IV. TOLLING OF STATUTE OF LIMITATIONS

36. Plaintiff herein incorporates the aforementioned paragraphs and alleges that a tolling of statute of limitations is applicable in this legal action, as Plaintiff, based on the extremity of the intentional infliction of emotional distress and duress of being a victim of crime, in conspired deprivation of U.S. Constitutional protected rights, including fraudulent concealment of criminal evidence of motive, means and opportunity by those entrusted with serving and protecting all citizens of the community equally, on or before October of 2002, through present time of January of 2008, and the adverse interference with Plaintiff's business, through intrusive invasion of privacy, under color of law, including attorney-client relationships and/or legal representation, and the fact that Plaintiff has no legal background, that, at the time, Plaintiff was unable to write her own legal action and organize the necessary paperwork. Plaintiff also affirms that, up until the year of 2007, when the continuity, similarity, and "discovery of injury and pattern" became apparent, Plaintiff was unaware that these overt predicate acts constituted "racketeering activity" as referenced under the Racketeering Influenced and Corrupt Organization Act, hereby referred to as "RICO".

37. Tolling of statute of limitations is applicable in this cause of action since defendants, including those individuals yet unnamed and unknown and, thus, hereby referred to as "John Doe Defendants", acted with specific, premeditated intent, within, outside of, and beyond their official capacities, under color of law, color of office and color of authority (malfeasance of office), through an abuse of authoritative power, to plan, initiate, implement and execute a fraudulent scheme of action, to defraud and deprive Plaintiff of her intangible right to honest services, with specific intent, purpose and causation to inflict damage and injury to Plaintiff's person, property and business, including bodily injury, under color of law, in conspired deprivation of Plaintiff's First, Fourth, Eighth and Fourteenth U.S. Constitutional protected rights to retaliate, harass, threaten, intimidate and adversely interfere with Plaintiff's personal and professional endeavors and took overt predicate action to intentionally participate in and/or tacitly condone and turn a willful blindness to civil and criminal harassment directed against Plaintiff, in violation of state and federal laws, including civil rights and RICO statutes, in conspired deprivation of U.S. Constitutional protected rights to

protect those responsible, including taking administrative action to conceal, alter, and destroy physical evidence of unlawful criminal behavior, including a felony, to impede, hinder, obstruct and defeat the due course of lawful, legal justice, in deprivation of Plaintiff's First, Fourth, Eighth and Fourteenth U.S. Constitutional protected rights.

## V. BACKGROUND HISTORY/STATEMENT OF FACT:

38. This federal lawsuit is directly affiliated to and associated with a lawsuit filed in the U.S. District Court of Charleston, South Carolina, pertinent to subsequent overt predicate acts of retaliatory civil and criminal harassment directed against plaintiff, across state lines, presumably under color of law, under false pretenses and/or misconstrued misrepresentation of contrived circumstances and/or misinformation regarding Plaintiff, on or before October of 2002, while Plaintiff was still employed as an Office Manager for Kenosha County Executive Allan K. Kehl, $1010 - 56^{th}$ Street, Kenosha, Wisconsin, with specific intent, purpose and causation to corruptly cover up for and conceal intentional discriminatory practices in Plaintiff's then place of employment, Kenosha County Government, Kenosha, Wisconsin, constituting a "hostile working environment" actionable under Title VII of the Civil Rights Act of 1964 and Title I of the Americans with Disabilities Act of 1990, and in conspired deprivation of Plaintiff's First, Fourth, Fifth, Eighth and Fourteenth Amendment rights under the United States Constitution.

39. Throughout her five and a half year tenure of employment with Kenosha County Government, Kenosha, Wisconsin (09/98-01/04), Plaintiff was continuously subjected to working in an environmentally unhealthy environment permeated by second hand smoke in violation of Wisconsin Clean Indoor Air Law State Statute 101.123. This activity was consistently participated in by all the aforementioned supervisors and administrators of Kenosha County, including Allan K. Kehl.

40. This continuous exposure to second hand smoke posed a significant medical, health and safely risk to Plaintiff due to Plaintiff's medically diagnosed and documented physical disabilities of scoliosis and asthma. Directly attributable to the scoliosis and asthma, Plaintiff suffers from significantly diminished respiratory system and breathing capacity, of which substantially limits one or more major life activities, as referenced under the Americans with Disabilities Act of 1990.

41. This employer, more specifically, Allan K. Kehl, was cognizant of the fact, on or before September of 1998, that Plaintiff had a documented medical condition that was exacerbated by the second hand smoke in the work environment due to her significantly diminished respiratory capacity.

42. As a reasonable accommodation to divert and/or camouflage the effects of the second hand smoke in the front office, Plaintiff, as well as her predecessor, Ginny Kikilas, requested of Allan Kehl that an air filter be purchased for the front office area.

43. All requests were denied by Mr. Kehl due to fiscal budget constraints and undue financial hardship of increased office expenditure. Mr. Kehl knowingly and willingly refused to provide reasonable accommodation for Plaintiff's disability.

44. Over the course of Plaintiff's employment with Kenosha County Government (09/98 – 01/04), Plaintiff was continuously subjected to unwelcome gender specific sexual advances and overtures by two supervisors and cabinet members of Mr. Kehl's administration, then-actionable under Title VII of the Civil Rights Act of 1964.

45. Mr. Kehl was fully cognizant of his then-Administrative Assistant Michael Serpe's past history of gender specific, sexual suggestive behavior and conduct toward female co-workers prior to his recommendation and appointment of Michael Serpe to his then position. Mr. Kehl, cognizant of the fact that Plaintiff was aware of Mr. Serpe's sexual and predatory behavior toward female co-workers, verbally assured Plaintiff, in front of a witness, in Plaintiff's initial interview in September of 1998, that Mr. Serpe's conduct would be above reproach.

46. Over the course of Plaintiff's employment with Kenosha County, Plaintiff was continuously subjected to unwelcome sexual advances and sexually descriptive conversation involving her female anatomy and verbal abuse by Michael Serpe.

47. Prior to Plaintiff's resignation in January of 2004, Plaintiff was continuously being referred to and called "psycho" and "paranoid schizophrenic" by Mr. Serpe in front of other supervisors, co-workers and the general public. Plaintiff filed an internal complaint with her immediate supervisor, Allan Kehl, and then-personnel director Brooke E. Koons.

48. During and between March of 2000 – 2002, through verbal and written communication, on at least two separate occasions, Plaintiff had appraised Mr. Kehl of specific complaints and concerns of Plaintiff's then-assistants', specific to Michael Serpe's sexual banter and foul mouth.

49. Plaintiff's then-former assistant, Carla Ponce, sister of then-assistant personnel Director, Diane Yule, was transferred from the Kenosha County Executive's Office to the Kenosha County Courthouse, at Plaintiff's recommendation and request, based on ill feelings attributable to the termination of a former administrator, Raffaele Montemurro, and for work related matters. Ms. Ponce did not leave under the best of terms, and Plaintiff alleges, due to the totality of circumstances to date, that Ms. Ponce's departure from the County Executive's Office could have been a contributing factor to adverse employment action taken against Plaintiff, including "hostile working environment" and being targeted for job termination by administrators of Kenosha County on or before October of 2002.

50. Plaintiff alleges, but is unable to substantiate due to lack of cooperation of local, state and federal law enforcement authorities and public officials, presumably under color of law, comprising all three branches of government, that Plaintiff became targeted for job termination and elimination on or before October of 2002.

51. Plaintiff alleges, but is unable to substantiate due to lack of cooperation of law enforcement, presumably under color of law, that Plaintiff further became targeted for job termination and/or elimination following an incident at her then-residence on October 1, 2002, with then-Assistant Finance Director/Budget Manager Alan Swartz in which Plaintiff made verbally clear to Mr. Swartz that she not interested in a sexual relationship nor was she interested in engaging in threesomes. Mr. Swartz had asked Plaintiff on at least two separate occasions, if Plaintiff was interested in engaging in sexual relations with he and another woman. Plaintiff alleges that Mr. Swartz had motive, means and opportunity, due to his highly authoritative position within Kenosha County Government, to adversely retaliate against Plaintiff through job targeted elimination, and overt predicate acts of retaliatory, threatening harassment, to protect and shield himself personally and professionally from public disclosure and legal redress. Mr. Swartz was in a professional position to adversely affect Plaintiff's association with other county departments in terms of being provided with the resources necessary to successfully perform and accomplish Plaintiff's work related responsibilities conducive to the office, thereby, perpetuating a "hostile working environment", and, as a then professional responsibility as budget manager, had the authority to eliminate Plaintiff's position from the county budget.

52. Plaintiff alleges, but is unable to substantiate due to lack of cooperation of law enforcement officials, presumably under color of law, that Mr. Kehl, fully cognizant of Michael Serpe's and Alan Swartz's unlawful conduct and predatory behavior toward women, deemed Plaintiff a threat and potential liability to his personal and professional, elected position and his administration attributable to the aforementioned conduct and the smoking issue.

53. Plaintiff alleges that Mr. Kehl, through legal advisement of Corporation Counsel, was cognizant of the fact that he and his administration had no valid legal, lawful and legitimate defense to these unlawful actions due to established precedent of unlawful conduct and harassment in his administration, of which included numerous witnesses to the offenses.

54. Plaintiff alleges that Mr. Kehl foresaw, after Plaintiff was dissatisfied with results of in-house investigation of the aforementioned offenses by those defendants entrusted with the responsibility of enforcing and adhering to Kenosha County policies and procedures, in compliance to state and federal laws, especially since defendants were the specific participants and instigators of the entirety of the actions, the probability of Plaintiff contacting and filing a charge with the U.S. Equal Employment Opportunity Commission (EEOC) opposing discriminatory practices in the workplace, and reasonably deducted, based on the legal evidence, that Kenosha County would be lawfully and legally liable for engaging in discriminatory practices

in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Americans with Disabilities Act of 1990, and public disclosure of conduct and scandal would follow and threaten the professional and personal reputations of Mr. Kehl, his administration, and other participants/defendants responsible for conduct.

## COUNT ONE

55. Plaintiff herein incorporates the aforementioned paragraphs and alleges that, on or before October of 2002, while Plaintiff was still employed as an Office Manager for Kenosha County Executive Allan K. Kehl, 1010-56th Street, Kenosha, Wisconsin, defendants, in paragraphs 2-9, 13-15 & 22, deeming Plaintiff a potential threat to the Kenosha County administration, conspired, through a meeting of the minds, to plan, initiate, implement and execute a fraudulent scheme of action against Plaintiff, including intentional falsification of charges through misconstrued and/or fraudulent misrepresentation of contrived circumstances and/or misinformation, took administrative action, under color of law and color of authority (malfeasance of office), with specific intent, purpose and causation to corruptly cover up for and conceal intentional discriminatory practices in Plaintiff's then-place of employment, of which constituted a "hostile working environment" then-actionable under Title VII of the Civil Rights Act of 1964, Title I of the Americans with Disabilities Act of 1990, conspired state and federal civil rights violations, and violations of the Rackeetering Influenced and Corrupt Organizations Act, in conspired deprivation of Plaintiff's First, Fourth, Fifth, Eighth and Fourteenth U.S. Constitutional protected rights, to impede, hinder, obstruct and defeat the due course of justice and deny to Plaintiff the equal protection of the laws and thereby, protect the perpetrators from personal and professional liabilities and political scandal.

56. Plaintiff herein incorporates the aforementioned paragraphs and affirms that throughout her tenure of employment with Kenosha County Government, Kenosha, Wisconsin, from September of 1998 through January of 2004, Plaintiff was continuously subjected to working in an environment that exploited, violated, demeaned and degraded Plaintiff as an employee and as a working, professional woman, and subjected Plaintiff to working in an unhealthy environment permeated with second hand smoke in violation of Wisconsin Clean Indoor Air Law State Statute 101.123.

57. Plaintiff herein incorporates the aforementioned paragraphs and alleges that this specific action taken by defendants, minus procedural and substantive due process and equal protection of the laws, constitutes a violation of the Eighth Amendment as Plaintiff, as further outlined in the subsequent causes of action in this lawsuit, has been treated and sentenced as a criminal and deprived of her life, liberty and property without a chance to hear the charges against her, right to respond to the charges against her, and the right to present evidence and witnesses on her own behalf prior to being "secretly" charged and convicted, including full disclosure, in violation of privacy laws to third parties.

## COUNT TWO

58. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, that defendants 2-9, 13-15 & 22, took overt predicate action to conceal, tamper with and/or destroy tangible, physical evidence of the possible commission of a Class B Felony (burglary) that took place at Plaintiff's then-residence of 4705-67th Place, Kenosha, Wisconsin, on October 18, 2002. Plaintiff called 911 at 3:18 a.m. after visually observing and hearing an intruder(s) on the first floor of her residence. The Event Number for the 911 call on October 18, 2002, is 002002138063.

59. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff disclosed and provided testimony to responding officers of the City of Kenosha Police Department, T.R. Metzler, J.J. Wamboldt, and A.J. Skowronski, of which included the names of Kenosha County administrators with possible motive for wanting to harm Plaintiff and her family to conceal and cover up for unlawful conduct constituting a hostile working environment in Kenosha County Government, and to cover up for and retaliate against Plaintiff for refusing to engage in sexual activities with administrators of Kenosha County.

60. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff disclosed to law enforcement officers an incident at Plaintiff's then-residence of 4705-67th Place, Kenosha, Wisconsin, on October 1, 2002, with then-Assistant Finance Director/Budget Manager Alan Swartz, of which Plaintiff's spurned Mr. Swartz's sexual advances and stated disinterest for engaging in sexual practices.

61. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff also disclosed information pertinent to continuous sexual overtures by then-Administrative Assistant Michael J. Serpe.

62. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff's testimony and/or disclosure to law enforcement officers on October 18, 2002, of unlawful harassment directed against her by administrators of Kenosha County, would definitely warrant an incident report be filed by the responding officers of the Kenosha Police Department, since Plaintiff was fearful for herself and her family, and to provide for physical evidence of disclosure and testimony of possible suspects in the event that foul play and/or further criminal action and/or harassment be taken against Plaintiff. This gross failure and neglect to protect is a deprivation of Plaintiff's First and Fourteenth Amendment right to due process and equal protection of the laws.

63. Per Wisconsin State Statute, the act of burglary constitutes a Class B Felony, and as such, proper policy and procedure dictates that a report be filed.

64. The City of Kenosha Police Department, hereby referred to as the "KPD" is entrusted with, and sworn to uphold, the professional and public responsibility of equal enforcement and application of the laws to all citizens of the community, as provided for under the Fourteenth Amendment of the U.S. Constitution. To discriminatorily apply the laws of the land to Plaintiff, based on politics and political favors and association, the KPD violated Plaintiff's right to due process and equal protection of the laws.

65. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff contacted Kenosha County Executive Allan K. Kehl, her then-employer, the morning of October 18, 2002, to inform him of the burglary and intruders in her home the morning of October 18, 2002. Plaintiff expressed concerns for her safety and her family's safety.

66. Plaintiff herein incorporates the aforementioned paragraphs and attests that Mr. Kehl stated to Plaintiff in the telephone conversation of October 18, 2002, that he had reason to believe that someone had been in Plaintiff's home on numerous occasions without Plaintiff's knowledge and did Plaintiff notice anything missing, such as a coat? Mr. Kehl would not elaborate, but asked Plaintiff, "to trust him".

67. Plaintiff herein incorporates the aforementioned paragraphs and alleges that following the possible commission of and reporting of a possible felony at Plaintiff's residence on October 18, 2002, to law enforcement officers on October 18, 2002, possibly attributable to Plaintiff's co-workers, further civil and criminal harassment ensued and escalated both within and outside of the Kenosha County working environment.

68. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff contacted the City of Kenosha Police Department to request a copy of the incident report of October 18, 2002, to take to federal authorities, more specifically, the United States Federal Bureau of Investigation, to show tangible, physical evidence of the possible commission of a felony at Plaintiff's then-residence on October 18, 2002, Plaintiff's testimony and disclosure to law enforcement officers of intentional discriminatory practices constituting a "hostile working environment", names of possible suspects and retaliatory motives for potential infliction of harm to Plaintiff and her family, evidence of Plaintiff's fears and concerns specific to employment retaliation, and to substantiate and prove motive, means and opportunity for retaliation by the Kenosha County administration to protect Kenosha County administrators, including Allan Kehl, from professional and personal liabilities and scandal.

69. Plaintiff herein incorporates the aforementioned paragraphs and alleges, that through verbal and written communication, Plaintiff was notified that the attending officers on October 18, 2002, did not file an incident report, as the situation did not warrant criminal activity.

70. Plaintiff herein incorporates the aforementioned paragraphs and alleges that, since Plaintiff was and continues to be subjected to unlawful, retaliatory harassment, this U.S. Constitutional deprivation of due process and equal protection of the laws, deprives Plaintiff of the opportunity to present this physical evidence to federal authorities and this United States District Court of Milwaukee, Wisconsin, as a retaliatory motive by defendants for Plaintiff's reporting the possible commission of a felony to law enforcement officers on October 18, 2002, possibly attributable to then-co-workers, and continuously petitioning the government for a redress of grievances thereafter, for deprivation of due process and equal protection pertinent to tampering, concealing and/or destroying tangible evidence of Plaintiff's fear of retaliatory action by Kenosha County administrators of which could be, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, associated with the burglary and/or possible interruption by Plaintiff of intended foul play and/or possible homicide on October 18, 2002.

71. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, that defendants engaged in a conspiracy to cover up, using their extensive ties and association to law enforcement and local, state and federal agencies and public officials, to protect those responsible for unlawful harassment, including possible attempted homicide on October 18, 2002, from lawful and legal accountability, by taking administrative action, under false pretenses, to intentionally deprive Plaintiff of her U.S. Constitutional protected rights, under color of law, to impede, hinder and obstruct the due course of justice, including tampering, concealing and/or destruction of physical, criminal evidence of which could be used in a federal court of law, to substantiate existence and/or disclosure of criminal activity to law enforcement, and, therefore, constitutes obstruction of justice, pursuant to Title 18 U.S.C. Section 1519.

## COUNT THREE

72. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, that defendants conspired, through a meeting of the minds, and took administrative action, under color of law, under false pretenses and/or misconstrued information, with specific, malicious intent to impede, hinder, obstruct and defeat the due course of justice of holding defendants in paragraphs 2-9, 13-15 & 22, lawfully and legally accountable for the aforementioned actions in paragraphs 1-72, and subsequent paragraphs hereafter, by abusing their authoritative positions of power and resources, on or before October of 2002, through then present time of March of 2003, to access and use the personal identification information in Plaintiff's personnel file to obtain private and confidential information about Plaintiff, in violation of Plaintiff's Fourth Amendment right to privacy, minus procedural and substantive due process and equal protection of the laws, with intent and purpose to adversely use this information against Plaintiff,

including public disclosure to third parties in violation of state and federal privacy laws, to discredit and disqualify Plaintiff's allegations and testimony regarding administrators of Kenosha County government, including Allan Kehl, in conspired deprivation of Plaintiff's First, Fourth, Eighth and Fourteenth U.S. Constitutional protected rights.

73. Plaintiff herein incorporates the aforementioned paragraphs and alleges that defendants accessed and intentionally and adversely interfered with Plaintiff's medical privacy and patient-physician confidentiality and association, under color of law, minus procedural due process and equal protection of the laws, pertinent to her weight control management program with Dr. Rodrigo Mata II, 6123 Green Bay Road, Kenosha, Wisconsin.

74. Plaintiff herein incorporates the aforementioned paragraphs and alleges, minus procedural and substantive due process and equal protection of the laws, that defendants adversely used this information against Plaintiff to exploit the potential side effects of weight control medication, including paranoia and hallucinations, to take administrative action, under color of law, to intentionally interfere with Plaintiff's medical privacy and private matters concerning Plaintiff's business, property and person, as referenced in the aforementioned and hereafter paragraphs of this lawsuit, with specific intent, purpose and causation to negate and discredit and disqualify Plaintiff's allegations and testimony against Kenosha County officers, thereby impeding, hindering, obstructing, defeating and eliminating potential lawful, legal professional and personal accountability of Kenosha County, including Allan Kehl, under color of law, in conspired deprivation of Plaintiff's First, Fourth, Eighth and Fourteenth Amendment rights.

75. Plaintiff herein incorporates the aforementioned paragraphs and alleges, minus due process and equal protection, that defendants took this administrative action, under color of law, to intentionally deprive Plaintiff of her First and Fourteenth Amendment rights, to disallow Plaintiff of the opportunity to hear the charges against her, face her accusers, speak out and present her evidence and witnesses, since Plaintiff could lawfully and legally substantiate her credibility and uncover the deceit and fraudulent scheme of action planned, initiated, implemented and executed by Kenosha County personnel, including Allan Kehl, to avoid professional and personal legal and lawful accountability and political scandal.

76. Plaintiff hereby incorporates the aforementioned paragraphs and alleges that Plaintiff has been adversely affected by this specific cause of action since Plaintiff no longer trusts the private confidentiality and association of patient-physician medical care and treatment due to the intentional interference, violation, exploitation and public disclosure of Plaintiff's medical privacy in violation of state and federal privacy laws and U.S. Constitutional protected rights of the First, Fourth, Eighth and Fourteenth Amendment rights.

77. Plaintiff herein incorporates the aforementioned paragraphs and alleges that this specific action constitutes a deprivation of Plaintiff's Eighth Amendment right, as afforded under the U.S. Constitution, under color of law, as it deprives Plaintiff of her Fourth Amendment right to medical privacy, minus due process and equal protection of the laws, as afforded to Plaintiff under the Fourteenth Amendment, and the Sixth Amendment, since it deprives Plaintiff of a federally protected right, as if Plaintiff has been tried, convicted and sentenced in a criminal court of law, minus the right to counsel and the private, confidential details of the case released to the public without Plaintiff ever being appraised of the crime that Plaintiff's accused of.

78. Plaintiff herein incorporates the aforementioned paragraphs and alleges that had the City of Kenosha Police Department and the Kenosha County Sheriff's Department performed their professional sworn responsibilities to serve and protect all citizens of the community equally regardless of politics and political favors and associations and connections, the aforementioned, this cause of action, and the subsequent causes of action, would never have ensued and caused irreparable damage and injury to Plaintiff and, ultimately her children. Based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, Plaintiff alleges that both the City of Kenosha Police Department and the Kenosha County Sheriff's Department were fully cognizant of, if not actual participants in, the unlawful harassment being taken against Plaintiff and turned a willful blindness by deliberate neglect and failure to perform their sworn responsibilities of enforcing state and federal statutes in accordance with U.S. Constitutional protected rights, and overtly used their professional positions to cover up for those responsible by tampering with, concealing and/or destroying tangible evidence of potential criminal conduct, and consistently refusing to investigate and/or refer for investigation to the proper authorities and/or jurisdiction to protect Plaintiff and her family from subsequent and future harms.

## COUNT FOUR

79. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, constituting an ongoing similarity of pattern, involving the same victims, with similar intent, purpose and causation of infliction of damage and injury to Plaintiff's person, property and business, including bodily injury, that defendants in paragraphs 2-9, 13-15 & 22, participated in, had knowledge of, and/or hired and/or elicited Nello Ventura's, 2109 – 60ᵗʰ Street, Kenosha, Wisconsin, services on or before January 23, 2003, to engage in an act of racketeering by intentionally backing into Plaintiff's vehicle while Plaintiff was stopped at a traffic light at the intersection of 60ᵗʰ Street and 22ⁿᵈ Avenue in Kenosha, Wisconsin, at approximately 12:10 p.m. Plaintiff's vehicle sustained considerable damage to driver side (Title 18 U.S.C. Section 1513 (b) (2) (e).

80. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, that defendants conspired, through a meeting of the minds, to plan, initiate, implement and execute an overt retaliatory predicate act of racketeering in furtherance of fraudulent scheme and/or objective to inflict property damage to Plaintiff's 1997 Mercedes Benz E-320, bodily injury and/or attempted homicide through an act of physical violence, in retaliation for Plaintiff reporting the possible commission of a felony to law enforcement officials, and continuing to pursue and petition the government for a redress of grievances specific to this offense, and making charges opposing discriminatory practices in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Americans with Disabilities Act of 1990.

81. Plaintiff herein incorporates the aforementioned paragraphs and alleges, that defendants committed an act of racketeering against Plaintiff, under color of law, in conspired deprivation of Plaintiff's U.S. Constitutional protected rights, to inflict physical and psychological bodily injury onto Plaintiff, in retaliation for the aforementioned in paragraphs 1-80, including Plaintiff's continuous efforts to petition the government for a redress of grievances specific to failure and neglect of those entrusted with the professional responsibility to serve and protect all citizens of the community equally, more specifically, Plaintiff, a victim of civil and criminal harassment, by filing of a police report corroborating the possible commission of a felony and Plaintiff's reporting of the possible commission of a felony, including evidence of testimony given to law enforcement officers. Plaintiff alleges that defendants engaged in this act of racketeering with intent to kill, inflict bodily injury, threaten, harass and/or intimidate Plaintiff into ceasing further lawful, legal justice and retribution against supervisors, administrators and co-workers of Kenosha County Government, including Allan Kehl.

82. Plaintiff herein incorporates the aforementioned paragraphs and alleges that the aforementioned defendants conspired to take this action, through a meeting of the minds, and took overt predicate action in furtherance of fraudulent scheme to impair and blemish Plaintiff's driving record, create additional financial expense to Plaintiff, and adversely interfere with Plaintiff's insurance coverage by executing a "hit" on Plaintiff's vehicle and thereby, defendants committed insurance fraud through filing of false report and claims pertinent to the circumstances involving the intentional accident through two insurance companies, State Farm Insurance and Mr. Ventura's insurance carrier, of which meets the required RICO element of use of interstate commerce in furtherance of fraudulent scheme to inflict damage and injury to person, property and business.

83. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict damage and injury to Plaintiff involved the use of the wires to advance, conceal, perpetuate or further the fraudulent scheme based on a material representation and/or misrepresentation of fact, this action constitutes a violation of Title 18 U.S.C. Section 1343.

84. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict damage and injury to Plaintiff involved the use of the U.S. mail to plan, implement, advance, conceal and/or execute in furtherance of fraudulent scheme, this action constitutes a violation of Title 18 U.S.C. Section 1341.

85. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action in furtherance of fraudulent scheme and/or objective involved the use and/or financial transaction of a federally insured financial institution, this action constitutes a violation of Title 18 U.S.C. Section 1344 (2).

86. Plaintiff herein incorporates all of the aforementioned paragraphs and alleges that the aforementioned defendants collectively conspired, and were active, willing, knowing and contributing participants and accessories to this action and could have at any time reported said activity to the proper authorities and, thereby, prevented subsequent tangible damage and injury, including personal and bodily injury, to Plaintiff. A reasonable person could have foreseen the intended result and causation of injury and damage, and/or potential homicide, as a result of this outrageous and misleading conduct, including insurance fraud through intentional misrepresentation of stated facts.

87. Plaintiff herein incorporates the aforementioned paragraphs and alleges that had the City of Kenosha Police Department and the Kenosha County Sheriff's Department performed their professional sworn responsibilities to serve and protect all citizens of the community equally regardless of politics and political favors and associations and connections, by investigating and/or referring to the appropriate authoritative body for investigation, the aforementioned, this cause of action, and the subsequent causes of action, would never have ensued and caused irreparable damage and injury to Plaintiff and her children. Based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, Plaintiff alleges that both the City of Kenosha Police Department and the Kenosha County Sheriff's Department were fully cognizant of, if not actual participants in, the unlawful harassment being taken against Plaintiff and turned a willful blindness by deliberate neglect and failure to perform their sworn responsibilities of enforcing state and federal civil rights and RICO violations and/or referring for investigation to the appropriate authoritative body and/or jurisdiction, in conspired deprivation of U.S. Constitutional protected rights, including the right to due process and equal protection of the laws prior to deprivation of life, liberty and property.

88. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff has been financially injured by this specific action in the amount of $60,000.

## COUNT FIVE

89. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Mr. Allan Kehl, acting under color of law, conspired, through a meeting of the minds with Holly Ashley, c/o Dr. Charles Ashley, 4906 – 68th Street, Kenosha, Wisconsin, Dennis Schultz, Director of Kenosha County Department of Health and Human Services, Frank Matteo, Director of Kenosha County Division of Health Services, Randall E. Wergin, Environmental Health Director, Kenosha County Division of Health Services, Ric Schmidt, Chief Executive Officer, United Hospital Systems, and "John Doe Defendants" and intentionally and maliciously abused the authoritative power of his office and his close personal and professional association to Dennis Schultz, then-Director of Kenosha County Department of Health and Human Services, to retaliate against Plaintiff for making a complaint and/or charge opposing discriminatory practices within the Kenosha County work environment and for reporting the possible commission of a felony to local, state and federal law enforcement officials, including testimony incriminating his administration and/or administrators and/or affiliates and/or associates of his administration, by falsifying a dog bite report on Plaintiff's then-pet canine, Winston, on March 21, 2003, with the Kenosha County Division of Health Services, working in concert with United Hospital Systems, Kenosha, Wisconsin.

90. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Allan Kehl worked for 2-3 years at United Hospital Systems, 6308 – 8th Avenue, Kenosha, Wisconsin, under the direction of Mr. Ric Schmidt, in between his time as Kenosha County Sheriff and Kenosha County Executive of Kenosha County, Wisconsin.

91. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Mr. Kehl and "John Doe Defendants" took administrative action, under color of law, across state lines, to interfere and tamper with Plaintiff's canines' medical records, medical care and treatment at Antioch Animal Hospital, 40949 Highway 83, Antioch, Illinois, including falsification of dog bite report, to inflict damage and injury to Plaintiff's person, property and business, including bodily injury, due to extreme infliction of emotional distress, in conspired deprivation of U.S. Constitutional protected rights of First, Fourth and Fourteenth Amendments, including the right to procedural due process and equal protection of the laws when falsely accused of a crime.

92. Plaintiff herein incorporates the aforementioned paragraphs and alleges that due to the totality of circumstances to date on or before October of 2002, through present time of January of 2008, constituting a continuity and similarity of pattern with related intent, purpose and causation of infliction of damage and injury, that defendants conspired to initiate, implement and execute this fraudulent scheme of overt predicate action, across state lines, to defraud plaintiff financially through fraudulent expenses for nonexistent actions and additional expenses associated with intentional destruction and/or falsification of both Plaintiff's canines' medical records.

93. Plaintiff herein incorporates the aforementioned paragraphs and alleges that based on the totality of circumstances to date on or before October of 2002, through January of 2008, that Mr. Kehl orchestrated this specific action, working in concert with the aforementioned in this specific cause of action, including John Doe Defendants, to threaten, intimidate, harass and inflict further intentional stress onto Plaintiff, to discourage her from seeking further lawful, legal action against his administration, and for continuously petitioning the government for a redress of grievances specific to Plaintiff reporting the possible commission of a felony to law enforcement officers and the probable cover-up that ensued to protect those responsible from being held lawfully and legally accountable for their actions, and to discredit and disqualify Plaintiff's character by making her appear as a neglectful dog owner, unstable, unable to manage and control her pet canine, and, thereby, adversely affect Plaintiff's insurance coverage by creating a potential liability through fraudulent practices and fictitious scenarios.

94. Plaintiff herein incorporates the aforementioned paragraphs and attests that Holly Ashley, who was in town visiting her father, Dr. Charles Ashley from Minneapolis, Minnesota, deliberately and intentionally lied to public officials, including hospital personnel, on March 21, 2003, when she falsely accused Plaintiff's canine of biting her, more specifically, ripping a layer of her skin off, on March 20, 2003. Ms. Ashley left the state of Wisconsin on March 21, 2003, after filing a false report with the Kenosha County Division of Health Services on March 21, 2003, and United Hospital System, Kenosha, Wisconsin.

95. Plaintiff herein incorporates the aforementioned paragraphs and alleges that this specific cause of action constituting fraud caused Plaintiff significant financial damage and was a significant and contributing factor to Plaintiff's bodily injury and Winston's premature death, due to falsified report and subsequent actions taken, based on the information and content of report, in conspired deprivation of Plaintiff's procedural and substantive right to due process and equal protection of the laws prior to deprivation of life, liberty and property.

96. Plaintiff herein incorporates all of the aforementioned paragraphs and alleges that since this overt predicate action was conspired through a meeting of the minds, in furtherance of fraudulent scheme to deprive Plaintiff of the intangible right of honest services through deceitful practices, this action constitutes a violation of Title 18 U.S.C. Section 1346.

97. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict damage and injury to Plaintiff involved the use of the wires to advance, conceal, perpetuate or further the fraudulent scheme based on a material representation and/or misrepresentation of fact, this action constitutes a violation of Title 18 U.S.C. Section 1343.

98. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict damage and injury to Plaintiff involved the use of the U.S. mail to plan, implement, advance, conceal and/or execute in furtherance of fraudulent scheme, this action constitutes a violation of Title 18 U.S.C. Section 1341.

99. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action in furtherance of fraudulent scheme and/or objective involved the use and/or financial transaction of a federally insured financial institution, this action constitutes a violation of Title 18 U.S.C. Section 1344 (2).

100. Plaintiff herein incorporates all of the aforementioned paragraphs and alleges that the aforementioned defendants collectively conspired, and were active, willing, knowing and contributing participants and accessories to this action and could have at any time reported said activity to the proper authorities and, thereby, prevented subsequent tangible damage and injury, including personal and bodily injury to Plaintiff. A reasonable person could have foreseen the intended result and causation of injury and damage as a result of this outrageous and misleading conduct and intentional misrepresentation of stated facts.

101. Plaintiff herein incorporates the aforementioned paragraphs and alleges that had the City of Kenosha Police Department followed proper policy and procedure on October 18, 2002, and subsequent appraisals of unlawful, criminal harassment, in violation of state and federal statutes, thereafter, and/or referred to the appropriate authoritative body, this specific cause of action, the aforementioned causes of action and the subsequent causes of action would not have taken place and caused irreparable damage and injury to Plaintiff's person, property and business, including bodily injury, due to intentional infliction of emotional distress, in conspired deprivation, under color of law, of Plaintiff's First, Fourth, and Fourteenth Amendment U.S. Constitutional protected rights.

102. Plaintiff herein incorporates the aforementioned paragraphs and alleges that had the Kenosha County Sheriff's Department investigated and/or referred to the appropriate authoritative body, any and all of Plaintiff's allegations and reports to their department on or before October of 2002, through then-present time of January of 2004, including Plaintiff's verbal communications with Sheriff David Beth and Chief Deputy Charles Smith, this specific cause of action, the aforementioned and the subsequent causes of action taken since October of 2002, would not have been planned, initiated, implemented and executed in furtherance of fraudulent scheme to inflict irreparable damage and injury to Plaintiff and her family due to willful blindness, failure and neglect to enforce state and federal statutes relevant to civil rights and RICO violations, and failure to protect and keep Plaintiff and her family safe from future harms, in conspired deprivation of U.S. Constitutional protected rights of First, Fourth, and Fourteenth Amendments, under color of law, by the Kenosha County Sheriff's Department.

## COUNT SIX

103. Plaintiff herein incorporates the aforementioned paragraphs and alleges that based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, that Plaintiff's Uncle Bruce Makar, San Mateo, California, was the probable victim of foul play due to his professional background and numerous intellectual attributes, including high knowledge and applicability of employment law. Mr. Makar had successfully litigated and won a lawsuit against a former employer, Coldwell Banker, just a few years prior to 2002.

104. Plaintiff herein incorporates the aforementioned paragraphs and attests that Bruce Makar died on May 2, 2003, while undergoing dialysis in San Mateo, California. Based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, and the aforementioned defendants in paragraphs #2-9, 13-15 & 22, direct ties and association to racketeering enterprises and organized crime, the high stakes legalities involved, and the fact that Mr. Makar would have made an incredible ally due to his mental strength, education, intelligence, perseverance and experience, Plaintiff reported her concern of possible foul play to law enforcement authorities attributable to his death, with specific intent, purpose and causation to eliminate a potential witness, and/or threaten, harass and intimidate Plaintiff into ceasing further lawful, legal action against defendants.

105. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Mr. Makar had a legal background and extensive knowledge of law, since he completed two and a half years of law school at Chicago-Kent College of Law in Illinois, and was a successful Plaintiff in a lawsuit against a former employer, Coldwell Banker, just a few years prior to 2002.

106. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff had appraised her then-employer, Allan Kehl, of the stated facts in paragraph #105, following the incident with her canine, Winston, in April of 2003.

107. Plaintiff herein incorporates the aforementioned paragraphs and alleges that local, state and federal law enforcement authorities, in both the States of Wisconsin and South Carolina, have consistently refused to investigate this specific action and/or any and all of the aforementioned and subsequent causes of action in this federal suit and the federal suit in the U.S. District Court of Charleston, South Carolina, in deprivation of Plaintiff's First, Fourth, Fifth, Eighth and Fourteenth Amendment rights.

108. Plaintiff herein incorporates the aforementioned paragraphs and alleges that had the City of Kenosha Police Department followed proper policy and procedure on October 18, 2002, and, thereafter, after appraisals of unlawful harassment, including referral to the appropriate authoritative body, this specific cause of

action, the aforementioned and subsequent causes of action would not have been further planned, initiated, implemented and executed and the cause of irreparable damage and injury to Plaintiff and her family, including future harms, directly attributable to the willful blindness of civil/criminal harassment in violation of state and federal civil rights and RICO laws, by this law enforcement agency, under color of law, in conspired deprivations of U.S. Constitutional protected rights of First, Fourth, Eighth and Fourteenth Amendments.

109. Plaintiff herein incorporates the aforementioned paragraphs and alleges that had the Kenosha County Sheriff's Department investigated and/or referred to the appropriate authoritative body, any and all of Plaintiff's allegations and reports to their department on or before October of 2002, through then-present time of January of 2004, including Plaintiff's verbal communications with Sheriff David Beth and Chief Deputy Charles Smith, this specific cause of action, the aforementioned and the subsequent causes of action taken since October of 2002, would not have been further planned, initiated, implemented and executed and the cause of irreparable damage and injury to Plaintiff and her family, including future harms, directly attributable to the willful blindness of civil/criminal harassment in violation of state and federal civil rights and RICO laws, by this law enforcement agency, under color of law, in conspired deprivation of U.S. Constitutional protected rights of First, Fourth, Eighth and Fourteenth Amendments.

## COUNT SEVEN

110. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, constituting a continuity of pattern with similar, intent, purpose and causation to inflict irreparable damage and injury to Plaintiff's person, property and business, including infliction of bodily injury, due to intentional infliction of emotional distress, minus due process and equal protection, that defendants in paragraphs 2-9, 13-16 & 22, conspired to, had knowledge of, participated in and/or took overt predicate action in furtherance of fraudulent scheme by intentionally and adversely interfering with Plaintiff's contractual relations with attorney-client association and attorney-client privilege, between Plaintiff and Thomas W. Anderson, Junior, Attorney-at-Law, 5401 – 60th Street, Kenosha, Wisconsin in a divorce matter in violation of plaintiff's state and federal rights to privacy, under color of law, and in conspired deprivation of U.S. Constitutional protected First, Fourth and Fourteenth Amendment rights.

111. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Thomas Anderson Jr. accepted to represent Plaintiff, Heather C. Hoffman, in a separation/divorce matter on July 30, 2003, under false pretenses, with dishonorable intentions in furtherance of fraudulent scheme and/or objective of "enterprise" and/or "association in fact" to defraud Plaintiff of her business and property thereby, the intangible right of honest services, under color of law, with

similar intent, purpose and causation to inflict irreparable financial damage and injury to Plaintiff's person, property, and business.

112. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff hired and paid Mr. Anderson a retainer fee of $1700.00 on July 30, 2003, to represent Plaintiff in a separation/divorce matter.

113. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date on or before October of 2002, through present time of January of 2008, demonstrating continuity of adverse interference with Plaintiff's person, property and business, inclusive of the aforementioned paragraphs of 1-113 in this legal suit and subsequent paragraphs hereafter, that defendants, through intrusive violation of Plaintiff's privacy rights, under color of law, intercepted information and/or communication regarding Plaintiff's initial contact and hiring of Thomas Anderson, Jr., to represent Plaintiff in a separation and divorce matter on July 30, 2003, and, thus, conspired with Mr. Anderson to defraud Plaintiff of her business and property through inadequate, unethical legal representation reflective of intentional omissions, misrepresentations and fraudulent legal writings in direct conflict with Wisconsin State Statute of which could have been legally appealed and possibly overturned in a court of law.

114. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Mr. Anderson acted with specific, malicious intent and demonstrated gross misconduct when he accepted and took overt predicate action to represent Plaintiff in a legal separation/divorce matter on July 30, 2003, under false pretenses, in furtherance of fraudulent scheme of action to defraud Plaintiff of her business and property, in violation of the Professional Code of Ethics of Lawyers.

115. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Mr. Anderson, with malicious intent, did not represent Plaintiff to the best of his professional capabilities, but instead, intentionally performed sloppy legal work thereby, creating potential loopholes for appeal by Plaintiff's ex-husband, and subsequent damage and injury to Plaintiff's property and business, including legal title of ownership of Plaintiff's vehicle, then-residential property at 4705 – 67th Place, Kenosha, Wisconsin, and assumption of all marital debt by Plaintiff, excluding ex-husband's student loans and AT & T credit card. Based on totality of information to present date of January of 2008, Plaintiff alleges that Mr. Anderson was cognizant of and an active participant in furtherance of the conspiratorial objective of "the enterprise" to defraud Plaintiff and adversely used his professional position of trust and authority, in violation of the Professional Code of Ethics of Lawyers, to inflict irreparable damage and injury to his client's, Plaintiff's, business and property, under color of law, in conspired deprivation of Plaintiff's First, Fourth and Fourteenth U.S. Constitutional protected rights.

116. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, that as of July 30, 2003, Mr. Anderson became an active participant in the fraudulent scheme, using Plaintiff's trust, confidence and guidance in his professional reputation, counsel and legal work, both within and outside of the courtroom, as a retaliatory weapon against Plaintiff by corroborating with the "enterprise" and/or "association in fact", intentionally misleading Plaintiff through legal counsel, omissions and factual misrepresentations in legal documents, making a mockery of the judicial system on January 23, 2004, by not having the proper legal documents in his possession to finalize the paperwork in the divorce proceeding of January 23, 2004, knowingly and willfully using an official court room proceeding in furtherance of fraudulent scheme to defraud, and providing unprofessional, legal documentation following the proceeding relevant to the legal ownership of Plaintiff's possessions.

117. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff was irreparably financially injured in her property and business due to Mr. Anderson's intentional omissions and misrepresentations in his legal representation of at least $300,000.

118. Plaintiff herein incorporates the aforementioned paragraphs and attests that Plaintiff provided both verbal and written complaint to the Wisconsin State Supreme Court, Office of Lawyer Regulation, 110 East Main Street, Suite 315, Madison, Wisconsin, specific to Mr. Anderson's apparent conflict of interest in legal representation of client and Plaintiff, Heather C. Hoffman.

## COUNT EIGHT

119. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, that the aforementioned defendants in paragraphs #2-9, 13-15, 17 & 22, conspired, through a meeting of the minds, under color of law, to adversely interfere with Plaintiff's fundamental protected right to privacy, as afforded to her under the Fourth Amendment and state and federal privacy laws, in conspired deprivation of the First and Fourteenth Amendments, including deprivation of life, liberty and property, minus procedural and substantive due process and equal protection of the laws, pertinent to privacy of association and confidentiality in patient medical care and treatment on November 26, 2003, and December 9, 2003.

120. Plaintiff herein incorporates the aforementioned paragraphs and alleges that due to the extreme stress that Plaintiff was continuously subjected to attributable to the adverse employment action of working in a "hostile working environment", that Plaintiff scheduled a medical appointment for a complete physical evaluation with Dr. Leilane U. Sta Romana, M.D., Dominician Medical Building, 3734 Seventh Avenue, Kenosha, Wisconsin, on November 26, 2003.

121. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff received her physical evaluation and examination by Diane Roberts, Nurse Practitioner, for Dr. Leilane U. Sta Romana on November 26, 2003.

122. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff returned to Dr. Sta Romana's office on December 9, 2003, in follow-up to office visit of November 26, 2003. Plaintiff met with and discussed results of physical examination of November 26, 2003, and blood/lab work results of November 28, 2003, with Ms. Roberts, and underwent a pap smear/pelvic exam.

123. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff requested to discuss her concerns pertinent to lab work results of November 28, 2003, with Dr. Sta Romana. Plaintiff was told by Ms. Roberts that Dr. Sta Romana had no concerns specific to the results of the lab work, and, therefore, there was no need to meet with Plaintiff.

124. Plaintiff herein incorporates the aforementioned paragraphs and attests that Plaintiff has never met, spoke with, and/or ever had any contact or association with her then-primary physican, Dr. Leilane U. Sta Romana. Plaintiff, to the best of her knowledge, has never seen Dr. Sta Romana.

125. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, that the aforementioned defendants, conspired to intentionally interfere with Plaintiff's medical privacy and association and confidentiality with Dr. Sta Romana's office to circumvent her meeting with Dr. Sta Romana and discussing the unlawful harassment within the Kenosha County working environment and the adverse effect that it was having on Plaintiff's physical and psychological health, including the retaliatory second hand smoke, in violation of Wisconsin State Statute.

126. Plaintiff herein incorporates the aforementioned paragraphs and alleges that defendants conspired to adversely interfere in Plaintiff's federally protected right to medical privacy, association and confidentiality, to impede, hinder, obstruct and defeat the due course of justice in a legal proceeding by eliminating a potential expert witness who could confirm Plaintiff's then-physical and psychological health in correlation to Plaintiff's then hostile retaliatory working environment.

127. Plaintiff herein incorporates the aforementioned paragraphs and alleges that prior to October of 2002, Plaintiff never called in sick to work and actually lost vacation days/time due to her strong work ethic and commitment to her position. Plaintiff attests to this same commitment with her previous employment positions.

128. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff suffered debilitating migraine headaches due to the extreme stress of the adverse employment action, both within and outside of the working environment, and called in sick on numerous occasions between the time period of October of 2002, through then-present time of January of 2004.

129. Plaintiff herein incorporates the aforementioned paragraphs and alleges that defendants and Dr. Sta Romana, maliciously, under false pretenses, conspired to violate and obstruct Plaintiff's right to privacy and association specific to medical care and treatment, in violation of the Fourth Amendment, minus procedural and substantive due process and equal protection of the laws, and conspired to deprive Plaintiff of patient-physician consultation and professional medical care and treatment by a licensed physician of the State of Wisconsin, specific to her health concerns, ailments and medical tests.

130. Plaintiff hereby incorporates the aforementioned paragraphs and alleges that Plaintiff and her then-insurance company, Blue Cross Blue Shield, a business engaged in interstate commerce, were charged and paid for fraudulent medical expenditures.

131. Plaintiff hereby incorporates the aforementioned paragraphs and alleges that Plaintiff has been adversely affected by this specific cause of action since Plaintiff no longer trusts the private confidentiality and association of patient-physician medical care and treatment due to the intentional interference and gross violation and exploitation of Plaintiff's medical privacy, in violation of state and federal privacy laws and U.S. Constitutional protected First, Fourth and Fourteenth Amendment rights, specific to this action and inclusive of and associated with Paragraphs 72-78 of this legal suit.

132. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, and Plaintiff's knowledge of the thoroughness and medical diligence and professionalism of Dr. Sta Romana, based on the recommendations of other patients', that Dr. Sta Romana deviated from her normal practice, policy and procedure of application of hands on medical care and treatment by a licensed physician of the State of Wisconsin, when she intentionally conspired and acted in furtherance of conspired deprivation of Plaintiff's rights, under color of law, by intentionally discriminating against Plaintiff in providing fraudulent medical care and treatment.

## COUNT NINE

133. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, that Paul Kresse, 3402 – 88th Street, Kenosha, Wisconsin, entered into a contract with Plaintiff, Heather C. Hoffman, to make home improvements on Plaintiff's then-residential property at 4705 – 67th Place, Kenosha, Wisconsin, on May 12, 2004, under false pretenses, in furtherance of fraudulent scheme to inflict damage and injury to Plaintiff's person, property and business, including bodily injury, due to intentional infliction of emotional distress, in conspired deprivation of U.S. Constitutional protected rights, by intentionally sabotaging his work and Plaintiff's property so that Plaintiff would express her dissatisfaction thereby, giving Mr. Kresse the opportunity to breach the contract, quit the job, fail to perform the specified tasks in accordance to contract of May 12, 2004, and defraud Plaintiff financially.

134. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Mr. Kresse accepted Plaintiff's job offer to perform/make home improvements with specific, malicious intent to defraud Plaintiff of the intangible right to honest services by entering into contractual relations with Plaintiff with malice forethought to take Plaintiff's money without performing the work, thereby, depriving Plaintiff of her financial resources, the need to hire another contractor at additional expense to Plaintiff, including additional work to be performed due to Mr. Kresse ordering improper and ill fitting materials and, thus, further delaying the listing of Plaintiff's home on the real estate market causing Plaintiff additional financial injury.

135. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Mr. Kresse accepted the position as contractor to Plaintiff, working in concert with the "association in fact", including aforementioned defendants in paragraphs 2-9, 13-15, 18-19 & 22, to intentionally defraud Plaintiff in retaliation for Plaintiff making a charge and providing testimony in an official hearing before Administrative Law Judge John C. Gelhard, State of Wisconsin, Department of Workforce Development, Division of Unemployment Insurance, on April 21, 2004, against Allan K. Kehl and his administration opposing discriminatory practices in the workplace in violation of Title VII of the Civil Rights Act of 1964, Title I of the Americans with Disabilities Act of 1990, and inclusive of the entirety of the information contained in the paragraphs of 1-135, and hereafter in this legal suit.

136. Plaintiff herein incorporates the aforementioned paragraphs and attests that Plaintiff paid Mr. Kresse $1400.00 on May 12, 2004. Plaintiff was to pay Mr. Kresse an additional $300.00 upon completion of work.

137. Plaintiff herein incorporates the aforementioned paragraphs and attests that Mr. Kresse installed a new garbage disposal for Plaintiff. Mr. Kresse refused to provide to Plaintiff a receipt and warranty of this purchase.

Plaintiff herein incorporates the aforementioned paragraphs and alleges that Mr. Kresse inflicted further tangible damage to two of Plaintiff's kitchen drawers that Mr. Kresse had taken home to work on, improperly assembled the hardware, and improperly installed both drawers. When Plaintiff verbally addressed her concerns to Mr. Kresse over the phone, Mr. Kresse refused to discuss and/or visually take a look at Plaintiff's concerns and immediately quit the job. Mr. Kresse refused to provide to Plaintiff any tangible receipts to verify and show proof of purchase of supplies and supplier, including garbage disposal, doors, and hardware.

138. Plaintiff herein incorporates the aforementioned paragraphs and attests that Plaintiff hired Pat Jager, 906 Washington Road, Kenosha, Wisconsin, on July 25, 2004, (proposal #2318) to complete the work, including having to cut down (3) sets of slider doors and install new hardware (not the hardware purchased by Mr. Kresse); and cut down (2) new interior doors and install. This cost Plaintiff additional time, financial resources, and extreme aggravation due to the additional expense, time and resources.

139. Plaintiff herein incorporates the aforementioned paragraphs and alleges that, not including emotional distress and injury, Plaintiff was financially injured in the amount of $7,000.00 by this fraudulent transaction.

140. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, constituting an ongoing continuity of pattern, with similar intent, purpose and causation to defraud Plaintiff of her business and property and inflict bodily injury, working in concert with those clothed under color of law, in conspired deprivation of Plaintiff's First, Fourth and Fourteenth U.S. Constitutional protected rights, including due process and equal protection of the laws prior to deprivation of life, liberty and property, that Paul Kresse took overt predicate action, working in concert with a "third party" and/or "association in fact" and/or enterprise, in furtherance of fraudulent scheme to defraud Plaintiff of her business and property, when he entered into a contractual agreement with Plaintiff and accepted payment to perform home improvement tasks, as specified in the written and signed contract of May 12, 2004, with specific intent, purpose and causation to damage Plaintiff's tangible property and thereby, depreciate the value of Plaintiff's property, deliberately create a situation to breach the contract and leave Plaintiff with insufficient supplies and materials to successfully complete the project without taking additional time and financial resources to hire another contractor to complete the project, and intentionally omitting tangible receipts of proof of purchases for all merchandise and supplies, including warranties, due to fraudulent deceit of totality of business transaction and association with Paul Kresse.

141. Plaintiff herein incorporates the aforementioned paragraphs and alleges that this specific cause of action was taken by the aforementioned defendants, under color of law, attributable to the intentional failure and neglect of the City of Kenosha Police Department and the Kenosha County Sheriff's Department to investigate and/or refer for investigation Plaintiff's continuous allegations of overt predicate retaliatory acts of civil and criminal harassment in October of 2002, through present time of January of 2008, both within and outside of the work environment, in violation of state and federal civil rights and RICO statutes, and in conspired deprivation of Plaintiff's First, Fourth, and Fourteenth Amendment rights, including due process and equal protection of the laws to all citizens of the community equally, specifically a victim of criminal harassment constituting "acts of racketeering" by those specifically connected to and associated with organized crime. This cause of action has been a significant contributing factor to Plaintiff's physical and psychological bodily injury, due to conspired deprivation of Plaintiff's due process and equal protection of the laws, by those entrusted with the sworn responsibility of enforcement of the laws and equal protection to all citizens.

## COUNT TEN

142. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, that the aforementioned defendants in paragraphs 2-15 & 22, retaliated against Plaintiff for all the aforementioned in paragraphs 1-142, inclusive of this legal suit, in furtherance of retaliatory, fraudulent scheme and/or objective to inflict damage and injury to Plaintiff, by conspiring to adversely interfere with, and then taking overt predicate action in furtherance of, working in concert with Family Court Commissioner James Fitzgerald on June 24, 2004, under color of law, to intentionally deprive Plaintiff of her U.S. Constitutional protected right to provide for the care and management of her two children, as afforded to her under the First and Fourteenth Amendments, by demonstrating clear bias and prejudice against Plaintiff and her two children.

143. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Family Court Commissioner James Fitzgerald was acting outside of his judicial and official capacity as Family Court Commissioner of the Kenosha Circuit Court, when he conspired to adversely use his entrusted, sworn judicial power of authority and his courtroom as a retaliatory weapon against Plaintiff and her two children in furtherance of fraudulent scheme and/or plan or objective to inflict retaliatory damage and injury to Plaintiff and her family, including bodily injury, due to intentional infliction of emotional distress, minus due process and equal protection of the laws, in his official courtroom proceeding of June 24, 2004.

144. Plaintiff herein incorporates the aforementioned paragraphs and alleges that, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, with similar intent, purpose and causation of infliction of damage and injury, under color of law, with conspired deprivation of U.S. Constitutional protected rights of First, Fourth and Fourteenth Amendments, Family Court Commissioner James Fitzgerald was fully cognizant of and a direct participant in the fraudulent retaliatory scheme to inflict further damage and injury to Plaintiff by abusing and misusing his judicial authority and family courtroom in furtherance of fraudulent scheme.

145. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Family Court Commissioner James Fitzgerald openly ridiculed and mocked Plaintiff in open court regarding her resignation of employment with Kenosha County Government in January of 2004, attributable to working in a hostile working environment in violation of state and federal laws and U.S. Constitutional protected rights, fully cognizant of and having knowledge of the overt predicate acts of retaliatory harassment and adverse interference taken by this employer against Plaintiff, under color of law, in order to threaten, harass, intimidate, destroy and deter Plaintiff from seeking further lawful, legal action against this employer, and being in a position of judicial authority, intentionally turned a willful blindness to the civil and criminal harassment by failure and neglect to report unlawful harassment to appropriate law authoritative body, and, instead, using his judicial authority to inflict additional injury by feigning ignorance of said activity and mocking and ridiculing both Plaintiff and her ex-husband specific to the retaliatory conduct of adverse employment action taken by the Kenosha County administration, including adverse interference with the family court system in matters affecting Plaintiff's two children, by rendering his ruling against Plaintiff and her two children based on bias and prejudice.

146. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff disclosed in open court on June 24, 2004, to Family Court Commissioner James Fitzgerald, the circumstances that led up to Plaintiff's decision to tender her resignation of employment from Kenosha County government in January of 2004. Plaintiff's ex-husband also testified that he felt that he was terminated from his position of employment with American Appraisals in March of 2004, attributable to Plaintiff's former employer. Plaintiff alleges this admission by Plaintiff, as well as her ex-husband, Kevin Paskiewicz, constitutes appraisal of unlawful harassment, in violation of state and federal civil rights and RICO statutes, by a former employer and/or associates and/or affiliates of members of this employers administration, to a judicial authority, of which constitutes tangible evidence of admission of unlawful harassment, in a sworn official hearing, under oath, by a victim of criminal, retaliatory harassment, thereby, placing Family Court Commissioner James Fitzgerald in a professional and obligatory responsibility of reporting said activity to appropriate law enforcement officials.

147. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Family Court Commissioner, with malicious intent, ruled against Plaintiff and her two children in this court hearing of June 24, 2004, and in support of Kevin Paskiewicz without inquiry and/or mention of Plaintiff's two children.

148. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff requested a copy of the court transcripts of June 24, 2004, from family court reporter, Dorothy Dosemagen, to substantiate an abuse and misuse of judicial authority and discretion by a judicial officer of the court, including using his courtroom in a legal proceeding as a retaliatory weapon to mock, ridicule, deceive and further inflict financial damage and injury to Plaintiff and her children by substantially reducing Mr. Paskiewicz's financial obligations without ever once mentioning and/or inquiring about the children and/or their needs, including health insurance costs due to unemployment. Plaintiff was informed by Dorothy Dosemagen, both verbal and written, that no court transcripts were taken of the proceeding of June 24, 2004.

149. Plaintiff herein incorporates the aforementioned paragraphs and alleges that this constitutes a deprivation of Plaintiff's First and Fourteenth Amendment rights, since it hinders Plaintiff's right to appeal Family Court Commissioner James Fitzgerald's ruling directly attributable to extreme abuse of judicial authority based on bias and prejudicial behavior, and conceals evidence of fraudulent use of an official court proceeding with conspired malicious intent to deprive Plaintiff of the intangible right to honest services, in conspired deprivation of due process and equal protection of the laws.

150. Plaintiff herein incorporates the aforementioned paragraphs and alleges that judicial officers of the court, intentionally concealed, tampered with, and/or destroyed physical, tangible evidence of conspired, criminal activity, of which included the use of an official family courtroom proceeding in furtherance of fraudulent scheme on June 24, 2004, working in concert with judicial officers of the court, of which constitutes obstruction of justice with specific intent to impede, hinder and obstruct the due course of justice by destroying and/or concealing tangible evidence of a criminal conspiracy, in violation of Plaintiff's First and Fourteenth Amendment rights, as it disallows Plaintiff of the opportunity to present this evidence to federal officials and disallows Plaintiff of the opportunity to present this legal material as physical evidence to this U.S. District Court of Milwaukee, Wisconsin.

151. Plaintiff herein incorporates the aforementioned paragraphs and alleges that the court transcripts of June 24, 2004, would have provided to federal authorities tangible physical evidence of Plaintiff's disclosure of unlawful harassment to a judicial officer of the court, under sworn oath, in an open court proceeding, directly linking high ranking Kenosha County officers and administrators to unlawful and discriminatory harassment; therefore, this constitutes evidence of a motive, means and opportunity for subsequent retaliatory harassment and actions taken, including obstruction of justice, to destroy physical evidence of testimony pertinent to unlawful conduct.

## COUNT ELEVEN

152. Plaintiff herein incorporates all of the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, with ongoing continuity of pattern consistent of similar intent, purpose and causation to inflict irreparable financial damage and injury to Plaintiff's person, property and business, including bodily injury, due to intentional infliction of emotional distress, in conspired deprivation of due process and equal protection of the laws, that the aforementioned defendants in paragraphs 2-16, 18-19 & 22, conspired, through a meeting of the minds, under color of law, in furtherance of fraudulent scheme of action to defraud Plaintiff of her business and then-residential property at $4705 - 67^{th}$ Place, Kenosha, Wisconsin, and took over predicate action, across state lines, through adverse interference with the real estate listing and sale of Plaintiff's residential property, on or before July of 2004, through then-present time of July of 2005.

153. Plaintiff herein incorporates all of the aforementioned paragraphs and alleges that defendants, including John Doe Defendants, were active, contributing participants in a fraudulent scheme to defraud Plaintiff of her financial resources and property, clothed in state power, through intentional deceit and a malicious fraudulent misrepresentation of facts in real estate contract of July 26, 2004, and any and all contracts thereafter, in conspired deprivation of Plaintiff's First, Fourth, Eighth and Fourteenth U.S. Constitutional protected rights.

154. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, that defendants, more specifically, Fred and Lena Schlater, Coldwell Banker Real Estate One, 6809 Green Bay Road, Kenosha, Wisconsin, in furtherance of scheme to defraud, fully cognizant of Plaintiff's financial situation due to adverse employment actions, interception and exploitation of Plaintiff's privacy, in violation of the Fourth Amendment, entered into a real estate contract with Plaintiff, under false pretenses, acting in concert with a third party and/or association in fact, with conspired intent to hold off on legitimate offers and/orpotential buyers for Plaintiff's property with purpose to inflict further financial injury to Plaintiff thereby causing possible foreclosure and/or bankruptcy and/or forced acceptance of extremely low offer on property.

155. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff entered into a Residential Listing Contract with Coldwell Banker Real Estate One on July 26, 2004, to be effective through December 23, 2004. Property was listed at $259,900. On December 21, 2004, Plaintiff verbally conveyed to her listing agent, Sean Gitzlaff, via interstate telephone call from Hilton Head Island, South Carolina, to Kenosha, Wisconsin, that Plaintiff was considering holding off on contract extension due to no offers on property from July 26, 2004, through then present time of December 21, 2004.

156. Plaintiff herein incorporates the aforementioned paragraphs and affirms that on December 22, 2004, Plaintiff received her first offer to purchase via facsimile transmission from Kenosha, Wisconsin, to Hilton Head Island, South Carolina, in the amount of $210,000 from Joshua and Elizabeth Gardner, Kenosha, Wisconsin, per their agent, Kenneth Sprague, Coldwell Banker Real Estate One, Kenosha, Wisconsin. Plaintiff countered and offer was accepted on December 29, 2004, in the amount of $228,000 contingent on the sale of buyers residential property.

157. Plaintiff herein incorporates the aforementioned paragraphs and affirms that in good faith Plaintiff returned to her then-residence of 4705-67th Place, Kenosha, Wisconsin, in the latter half of January of 2005, to finalize the transaction and make arrangements for relocation of personal belongings. Between the time period of January of 2005, through April 29, 2005, based on discrepancies in verbal and written communication(s), Plaintiff suspected fraud through intentional misrepresentation(s) and omissions of stated facts in contract.

158. Plaintiff herein incorporates the aforementioned paragraphs and affirms that on behalf of his clients, Joshua and Elizabeth Gardner, Kenneth Sprague submitted to Plaintiff's agent, Sean Gitzlaff, a Residential Offer to Purchase on December 22, 2004, of which contained a financing contingency that was not reflective of actual pre-qualifications by financial lender, William Gaudet of Coldwell Banker, on December 17, 2004. Plaintiff received this qualification letter after the twenty day acceptance of the offer. In the offer of 12/22/04, relative to financing contingency, the Gardner's had a mortgage of not less than $180,000 for a term of not less than 30 years, monthly payment (principal and interest) not to exceed $1,079.00, and annual interest rate not to exceed 6%. Plaintiff, on advice of her agent, Sean Gitzlaff, had accepted this offer to purchase in good faith and further progressed towards completion of transaction by incurring additional time, resources and expense of traveling to Kenosha, Wisconsin, to make arrangements. Relative to the Gardner's terms upon initial submission of contract of December 22, 2004, monthly payment, including principal and interest, would have amounted to $1,079.19, so in actuality, this financial discrepancy could have legally rendered this contract null and void.

159. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff was assured by both parties that the Gardner's pre-qualification and/or financing approval, was consistent with financing contingencies of contract of December 22, 2004. Plaintiff requested a copy of the pre-approval letter from the lender. Pre-qualification letter of December 17, 2004, was not comparable to financing contingency in Offer to Purchase of December 22, 2004. The Gardner's did not qualify for an interest rate of 6%, but instead, qualified for an interest rate on or between 6.017 – 6.267%. The Gardner's loan amount was set at $199,750, therefore, rendering their monthly payment on or between $1,199.79 - $1,232.10. Therefore, the terms and conditions stated and agreed upon in the Offer to Purchase of December 22, 2004, were null and void due to actual lender qualifications and buyers' objectives and specifications of financing terms and conditions pertinent to acting in "good faith" of property purchase. Plaintiff alleges, based on the totality of circumstances to date, that this discrepancy was intentionally falsified.

160. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff requested an amendment be entered into reflective of terms and conditions of the financing pre-approval of December 17, 2004. The amendment dated March 14, 2005, contained a paragraph to include that the interest rate not exceed 6.25%; however, that did not encompass the entirety of the terms and conditions of the financing contingency on the original offer to purchase of December 22, 2004, of which would change by this inclusion. Plaintiff requested an updated Offer to Purchase be resubmitted reflective of terms and conditions of lender approved financing.

161. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff received from the Gardner's, via their agent, Kenneth Sprague, a pre-qualification letter of approval from Peter Stone, Mortgage Loan Officer, Johnson Bank, Kenosha, Wisconsin, reflective of new terms and conditions of financing approval, including: loan amount of $193,000; monthly principal and interest not to exceed $1,188.34; interest rate at 6.250%. In the revised Residential Offer to Purchase dated March 29, 2005, reflective of pre-approved financing terms and conditions of March 17, 2005, submitted by Kenneth Sprague, the first page had to be changed to be reflective of then-current date of March 29, 2005, and binding acceptance date of March 19, 2005. Plaintiff alleges, this was an intentional inclusion of language by Mr. Sprague, to again, have some item contain fraudulent information and/or misrepresentation to render the contract null and void.

162. Plaintiff herein incorporates the aforementioned paragraphs and alleges a discrepancy in contract of March 29, 2005, regarding closing date of April 29, 2005, and sale of buyer's contingency relative to sale and closing of then-property no later than April 21, 2005, which automatically rendered the contract null and void at 12:00 a.m. on April 22, 2005, prior to contract expiration date of April 29, 2005. Due to the established pattern of factual errors, Plaintiff alleges this was an intentional misrepresentation of stated fact and/or false information.

163. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff was informed by her listing agent, Sean Gitzlaff, on April 29, 2005, that Joshua and Elizabeth Gardner were not extending contract due to finding alternative property to purchase. Based on the continuity of pattern to date, Plaintiff alleges that this was the specific intent, purpose and causation of the Gardner's and their agent, Kenneth Sprague, when initial offer to purchase was made on December 22, 2004. Plaintiff sustained significant financial injury, including bodily injury, due to this specific fraudulent scheme and/or specific transaction of on or about $20,000.

164. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, that Kurt and Debbie Lawler, Kenosha, Wisconsin, through their agent, Jennifer Sturino, Century 21 Baltes-Selsburg, Kenosha, Wisconsin, were active participants in this fraudulent scheme to inflict financial damage and injury to Plaintiff through adverse interference with Plaintiff's business and property, under false pretenses, with intent, purpose and causation to inflict damage and injury, including personal and bodily injury, and took overt predicate action on April 29, 2005, via offer to purchase then-property at $4705 – 67^{th}$ Place, Kenosha, Wisconsin, acting in concert with conspiracy and/or association in fact, in the offered purchased price of $195,000.

165. Plaintiff herein incorporates the aforementioned paragraphs and affirms that on May 26, 2005, an offer to purchase Plaintiff's property was submitted to Plaintiff by Michael and Melissa Hartnell, via their real estate agent, Jodi Eidsor of Prudential Premier Properties, Kenosha, Wisconsin, for the purchase price of $218,000. Plaintiff countered and offer was accepted at $225,000. Through various credits to buyer including: $6500 for roof and $2,000 for closing costs, purchase price was reduced to $216,500; therefore, Plaintiff suffered substantial financial injury over the prolonged period of July 26, 2004, through closing of property on July 14, 2005. Plaintiff alleges, due to the totality of circumstances to date, that this was the conspired retaliatory intent of all the participants in this specific cause of action, acting in concert with those clothed under color of law, in conspired deprivation of Plaintiff's U.S. Constitutional rights, including the Fourteenth Amendment right of procedural and substantive due process and equal protection of the laws prior to deprivation of life, liberty and property.

166. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff suffered severe financial damage and injury, including personal and bodily injury due to intentional infliction of emotional distress, minus due process and equal protection of the laws, directly attributable to the conspired, overt predicate action taken in furtherance of fraudulent scheme to inflict damage and injury to Plaintiff on July 26, 2004, through adverse interference and fraudulent representation and misrepresentation of real estate contract(s) entered into in good faith by Plaintiff and reflective of conflict of interest by Coldwell Banker Real Estate One. Plaintiff was financially injured in her business and

property by this transaction of at least $150,000 due to defendants' conspired actions.

167. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict damage and injury to Plaintiff involved the use of the wires to to advance, conceal, perpetuate or further the fraudulent scheme based on a material representation and/or misrepresentation, this action constitutes a violation of Title 18 U.S.C. Section 1343.

168. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict financial damage and injury, including bodily injury, to Plaintiff involved the use of the U.S. mail to plan, implement, advance, conceal and/or execute in furtherance of fraudulent scheme, this action constitutes a violation of Title 18 U.S.C. Section 1341.

169. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective involved the use of and/or financial transaction of a federally insured financial institution, this action constitutes a violation of Title 18 U.S.C. Section 1344 (2).

170. Plaintiff herein incorporates the aforementioned paragraphs and alleges that this specific cause of action and overt predicate action taken in furtherance of scheme caused irreparable personal and bodily injury to Plaintiff since this act raped and violated Plaintiff of her personal privacy, including desecration of personal space and home, under false pretenses, in violation of the Fourth Amendment, minus procedural and substantive due process of the laws prior to deprivation of life, liberty and property, as afforded to Plaintiff under the Fourteenth Amendment.

## COUNT TWELVE

171. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, constituting an ongoing continuity and similarity of pattern, involving two or more predicate acts, across state lines, that subsequent action was taken in furtherance of fraudulent scheme of "enterprise" and/or "association in fact", under color of law, by state actors, through malicious abuse of power of authoritative position, under false pretenses and/or misconstrued information, in conspired deprivation of Plaintiff's First, Fourth and Fourteenth Amendment rights under the U.S. Constitution, to intentionally defraud and deprive Plaintiff of her lawful, legal tangible property, a 1997 Mercedes Benz E-320, minus due process and equal protection of the laws, in retaliation for plaintiff reporting the possible commission of a felony to law enforcement officers, of which possibly involved former public officials, supervisors, co-workers, associates and/or affiliates

of Kenosha County Government, Kenosha, Wisconsin, including aforementioned defendants in paragraphs 2-16 & 22, for Plaintiff making a charge and providing testimony against this employer for engaging in intentional discriminatory practices in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Americans with Disabilities Act of 1990, and for taking adverse action, both within and outside of the work environment, across state lines, to harass, threaten, bully, and intimidate Plaintiff into ceasing further legal action against this employer, associates of and/or John Doe Defendants.

172. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, from October of 2002, through present time of January of 2008, that Plaintiff may not possess a valid, title of legal ownership of vehicle of the State of South Carolina Certificate of Title of a Vehicle relative to Vehicle ID #WDBJF55F9VA387306, due to fraudulent and/or misrepresentation of stated policy and procedure in re-issuance of new certificate of title of vehicle, pursuant to Wisconsin State Statute 342.18 (3), by state employees of the Wisconsin State Department of Transportation, Division of Motor Vehicles, hereby referred to as "DMV" on March 16, 2005.

173. Plaintiff herein incorporates the aforementioned paragraphs and attests that Plaintiff, Heather C. Hoffman, acquired legal ownership of the above referenced vehicle, a 1997 Mercedes-Benz E-320, in a divorce settlement and hearing on January 23, 2004.

174. Plaintiff herein incorporates the aforementioned paragraphs and attests that original title was reported as lost and/or stolen to the Wisconsin State DMV on March 30, 2004, by Plaintiff, Heather C. Hoffman.

175. Plaintiff herein incorporates the aforementioned paragraphs and affirms the Wisconsin State DMV reissued a replacement title of vehicle to Plaintiff, Heather C. Hoffman, on March 30, 2004.

176. Plaintiff herein incorporates the aforementioned paragraphs and attests that Plaintiff's ex-husband, Kevin C. Paskiewicz, signed off on ownership of title of vehicle on March 31, 2004.

177. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff went to the DMV the morning of March 16, 2005, to apply for new title of ownership. Plaintiff was told by DMV that computers were down and to return the afternoon of March 16, 2005.

178. Plaintiff herein incorporates the aforementioned paragraphs and attests that Plaintiff returned to the DMV on the afternoon of March 16, 2005.

179. Plaintiff herein incorporates the aforementioned paragraphs and attests that Plaintiff received false and fraudulent information specific to the correct policy and procedure in surrender of old title and reassignment of new title of ownership, pursuant to Wisconsin State Statute 342.18 (3).

180. Plaintiff herein incorporates the aforementioned paragraphs and attests that Plaintiff received fraudulent information relative to Wisconsin State policy and procedure in reassignment of vehicle title, pursuant to Wisconsin State Statute 342.18 (3). Plaintiff was told by state employee of DMV to sign off on title of March 30, 2004, as seller (beneath Plaintiff's ex-husband, Kevin Paskiewicz's, signature/date) and informed not to include and/or sign on as the buyer/purchaser on legal document of title of March 30, 2004.

181. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff received a new title of ownership on March 16, 2005. Due to the drastic change in appearance of title, including watermark, Plaintiff had misgivings about the authenticity of new title of ownership of new title of March 16, 2005.

182. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff returned to the DMV the afternoon of March 16, 2005, to request to sign on as buyer/purchaser of the title of March 30, 2004, after research of Wisconsin State Statute pertinent to the aforementioned. Request was approved and action taken.

183. Plaintiff herein incorporates the aforementioned paragraphs and attests the authenticity of new title of ownership issued by the DMV to Plaintiff on March 16, 2005, was validated by the DMV the afternoon of March 16, 2005.

184. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, that Plaintiff was intentionally provided misinformation from the DMV in order to invalidate and nullify Plaintiff's lawful, legal right of ownership of vehicle through fraud.

185. Plaintiff herein incorporates the aforementioned paragraphs and affirms, that this action was taken by state actors, acting under color of law, to intentionally deprive Plaintiff of her tangible property, minus procedural due process and equal protection of the laws, prior to deprivation of life, liberty and property.

186. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Attorney Loren Keating, Loren J. Keating LLC, 1207 – 55th Street, Kenosha, Wisconsin, was unable to substantiate validity of title on May 2, 2005.

187. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff did not lawfully and legally register her vehicle in the State of South Carolina until February 6, 2006, due to fear of defective title of ownership "color of title" and/or "cloud on title" based on the false and misleading information given to Plaintiff by the Wisconsin State DMV on March 16, 2005, and the significant change in title appearance from March 30, 2004, through then-present time of March 16, 2005.

188. Plaintiff herein incorporates the aforementioned paragraphs and alleges that prior to vehicle registration in the State of South Carolina, Plaintiff reported her concerns relative to authenticity of legal ownership of vehicle title to law enforcement bodies, including the Beaufort County Sheriff's Department, Chief Deputy Solicitor Isaac McDuffie Stone III, U.S. Federal Bureau of Investigation and the State of South Carolina Department of Motor Vehicles, for fear of malicious, retaliatory action, under color of law, by the State of Wisconsin DMV.

189. Plaintiff herein incorporates the aforementioned paragraphs and alleges that per, the State of South Carolina State Statute 563-350, the South Carolina Department of Motor Vehicle will not register and license or transfer registration if the department has a reasonable ground to believe that the vehicle is stolen or the registration and licensing or transfer is a fraud against the rightful owner of the vehicle, and/or the application contains a false or fraudulent statement.

190. Plaintiff herein incorporates the aforementioned paragraphs and alleges that if, as Plaintiff suspects, based on the totality of circumstances to date from October of 2002, through present time of January of 2008, Plaintiff was issued a fraudulent title of ownership of vehicle in the State of Wisconsin on March 16, 2005, then legally and lawfully, the State of South Carolina Department of Motor Vehicles could not issue a valid title of ownership to Plaintiff, per State of South Carolina State Statute 563-350, thereby depriving Plaintiff of her lawful, legal right of ownership of title, minus due process and equal protection of the laws, and in direct conflict with Plaintiff's legal right of ownership.

191. Plaintiff herein incorporates all of the aforementioned paragraphs and attests that if the City of Kenosha Police Department and the Kenosha County Sheriff's Department had followed proper policy and procedure in October of 2002, and thereafter relative to Plaintiff's verbal and written concerns pertinent to overt predicate acts of civil and criminal harassment possibly attributable to members of the Kenosha County administration, including Kenosha County Executive Allan Kehl, and/or referred for investigation to the appropriate authoritative body, based on Plaintiff's allegations of potential intrusive violations of personal privacy and communication due to probable high stakes legal proceedings, any and all subsequent retaliatory actions and/or causes of actions in this legal suit and any other legal suits filed pertinent to this case on or after October 18, 2002, would not have been committed against Plaintiff, and therefore, no further financial damage and injury, including personal and bodily injury, due to the totality and severity of

the overt predicate actions taken against Plaintiff on or before October of 2002, through present time of January of 2008, in conspired deprivation of Plaintiff's U.S. Constitutional protected rights, would not have been initiated, implemented and taken against Plaintiff, and the causation of further harm and injury, of which constitutes theft of liberty and property, under color of law, and the cause of subsequent financial damage and injury to Plaintiff's person, property and business, including personal and bodily injury, due to intentional infliction of emotional distress based on the entirety of this situation, minus substantive and procedural due process and equal protection of the laws.

192. Plaintiff herein incorporates the aforementioned paragraphs and alleges, that this specific action, constitutes a violation of the Eighth Amendment, as it constitutes an action, under color of law, to inflict criminal punishment onto Plaintiff, in conspired deprivation of Plaintiff's First, Fourth, and Fourteenth Amendment rights, to intentionally deprive Plaintiff of her legal property, minus procedural and substantive due process and equal protection of the laws.

## COUNT THIRTEEN

193. Plaintiff herein incorporates all of the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, constituting an ongoing, continuity and pattern of overt predicate retaliatory action with similar, intent, purpose and causation to inflict irreparable damage and injury to Plaintiff, including bodily injury, under color of law, in conspired deprivation of U.S. Constitutional protected rights, that the aforementioned defendants, including those in paragraphs 2-16 & 22, and possibly, Julie Boynton-Paskiewicz, 3233 S. 69th Street, Milwaukee, Wisconsin, took overt predicate action and committed a criminal/federal offense against Plaintiff by accessing, impersonating and adversely using Plaintiff's personal identification information to interfere with Plaintiff's financial information and interfere with, tamper with, and obstruct the receiving, sending and delivery of Plaintiff's U.S. mail, on or before October of 2002, through present time of January of 2008.

194. Plaintiff herein incorporates the aforementioned paragraphs and alleges that, on or before October of 2002, through present time of January of 2008, that Plaintiff has sustained at least six known, overt tangible, criminal/federal offenses of identity theft, identity fraud, and/or tampering and obstruction of U.S. mail committed against Plaintiff, involving adverse criminal interference with Plaintiff's business and property, of which has inflicted further irreparable financial damage and injury to Plaintiff, including loss of future employment opportunities and substantial loss of future earning capacity, credit report, late fees, higher interest rates, time and resources, and personal and bodily injury, directly attributable to the intentional infliction of emotional distress of having been further victimized by a criminal offense, in violation of state and federal laws, including state and federal privacy laws, in conspired deprivation of Plaintiff's U.S. Constitutional protected

rights of the First, Fourth, Fifth and Fourteenth Amendments, which include procedural and substantive due process and equal protection of the laws prior to deprivation of life, liberty and property, since Plaintiff initially reported her allegations of actions of civil and criminal harassment directed against her to the City of Kenosha Police Department and the Kenosha County Sheriff's Department in October of 2002, and thereafter for subsequent retaliatory actions.

195. Plaintiff herein incorporates all of the aforementioned paragraphs and alleges that due to the extensive ties and close association to the aforementioned defendants to law enforcement authorities and local, state and federal officials, that the City of Kenosha Police Department and the Kenosha County Sheriff's Department, have intentionally and deliberately failed and neglected to follow proper policy and procedure since initial appraisal of unlawful harassment against Plaintiff, of which to the best of Plaintiff's knowledge, originated on or before October of 2002, was reported to both authoritative bodies in October of 2002, based on politics; therefore, subsequent irreparable damage and harm, including infliction of bodily injury, is directly attributable to both agencies failure to investigate, failure to refer to the appropriate authoritative body for investigation, and failure to act once appraised of a felony and/or felonies committed against a citizen of the community in retaliation for being perceived as a political threat to the Kenosha County administration, including Kenosha County Executive Allan K. Kehl, and/or any other citizen of the community and/or the United States of America.

196. Plaintiff herein incorporates the aforementioned paragraphs and attests that Plaintiff has sustained at least six known tangible counts of identity theft/identity fraud and/or tampering and obstruction of U.S. mail pertinent to the following accounts, including the last four digits of the accounts: (1) Citicard (Mastercard): 3418; (2) Kohl's Department Store: 8803; (3) Marshall Field's: 4347; (4) JcPenney's Department Store: 6161; (5) Target: 6390; and (6) Sears: 9637, of which constitute federal crimes, pursuant to **Title 18 U.S.C Section 1028 (a) (7); Title 18 U.S.C. Section 1341; Title 18 U.S.C. Section 1343; Title 18 U.S.C. Section 1344 (2); Title 18 U.S.C. Section 1513 (b) (2) (e); Title 18 U.S.C. Section 1701; Title 18 U.S.C. Section 245 (a) (1) (b) (1) (B) (4) (A); Title 18 U.S.C. Section 241;** and **Title 18 U.S.C. Section 242,** in deprivation of, under color of law, Plaintiff's U.S. Constitutional protected right, to substantive and procedural due process and equal protection of the laws prior to deprivation of life, liberty and property, as afforded to Plaintiff under the Fourteenth Amendment; violation of privacy in terms of access and use of Plaintiff's personal identification information to falsely impersonate Plaintiff to Plaintiff's contractual business affiliate, with intent to adversely interfere in Plaintiff's business and property matters, with specific, malicious intent, purpose and causation to defraud and inflict damage and injury, presumably working in concert with state actors, under color of law, minus procedural and substantive due process and equal protection of the laws; the right to petition the government for a redress of grievances, as afforded under the First Amendment, when deprived of life, liberty and property minus substantive and procedural due process and equal protection of the laws.

197. Plaintiff herein incorporates the aforementioned paragraphs and reiterates that Plaintiff has been continuously denied her U.S. Constitutional right to the proper administration of justice, as afforded to her under the First and Fourteenth Amendment, via a lawful investigation to find the perpetrators, press charges, prosecute and hold them criminally responsible and accountable for intentional invasion of privacy, unauthorized assess and use of Plaintiff's personal identification information, false impersonation, and adverse interference with a federally protected activity of sending, receiving and delivery of U.S. mail, with malicious intent to defraud and cause financial damage and injury to Plaintiff's business and property, including personal and bodily injury, through aggravated intentional infliction of emotional distress due to totality of circumstances, minus due process and equal protection of the laws.

198. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff has contact dates, names and phone records pertinent to all of the known aforementioned accounts in paragraph 196 adversely affected by this criminal offense. Plaintiff alleges that Plaintiff received conflicting information from all businesses relative to the adverse interference, including unauthorized impersonation of Plaintiff with intent, purpose and causation to change, redirect and/or reroute the delivery address of Plaintiff's U.S. mail, and U.S. mail returned as undeliverable.

199. Plaintiff herein incorporates the aforementioned paragraphs and attests that Plaintiff became cognizant of these criminal offenses taken against Plaintiff on or before March of 2005, while Plaintiff was in Kenosha, Wisconsin, addressing and dealing with potential fraud in association with a real estate contract of July 26, 2004, and a Residential Offer to Purchase Property on December 22, 2005, and, while there, was continuously exercising her First Amendment right to petition the government for a redress of grievances specific to deprivation of life, liberty and property, including the right to privacy against unreasonable searches and seizures, under false pretenses, as afforded under the Fourth Amendment of the U.S. Constitution, minus substantive and procedural due process and equal protection of the laws, as afforded under the Fourteenth Amendment.

200. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff has reported said activity to the appropriate local, state and federal authorities, in both the States of Wisconsin and South Carolina, and the District of Columbia, on or before March of 2005, through present time of January of 2008, pertinent to the interference of a federally protected activity, pursuant to Title 18 U.S.C. Section 245, of which per Title 18 U.S.C. Section 245 (a) (1) authorizes local law enforcement officials to investigate tangible evidence of an act of willful interference with a person's federally protected activity, specific to this case, in the sending, receiving and delivery of Plaintiff's U.S. mail of which caused, and continues to cause, specific injury, in this case, continuous, ongoing, financial injury, damage and hardship to Plaintiff.

201. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff contacted the U.S. Postal Service to report the overt predicate acts of intentional interference with Plaintiff's federally protected activity pertinent to the sending, receiving and delivery of Plaintiff's U.S. mail. Plaintiff was instructed to contact the U.S. Postal Service, $8511 - 104^{th}$ Avenue, Pleasant Prairie, Wisconsin, since Plaintiff had physically completed the temporary change of address form at this location in July of 2004. Plaintiff engaged in numerous phone conversations, on and between March 23, 2005, through April 28, 2005, with a federal officer of the U.S. Postal Service, Bob O'Leary. Upon completion of Mr. O'Leary's investigation on April 28, 2005, Mr. O'Leary stated to Plaintiff that only U.S. mail addressed to Heather Hoffman was to be forwarded to Plaintiff at 19 Wood Duck Road, Hilton Head Island, South Carolina; therefore, any U.S. mail addressed to Heather Paskiewicz and/or Heather Hoffman-Paskiewicz would not have been forwarded to Plaintiff at location of 19 Wood Duck Road, Hilton Head Island, South Carolina.

202. Plaintiff herein incorporates the aforementioned paragraphs and attests that Mr. O'Leary, in furtherance of scheme to defraud Plaintiff of the intangible right to honest services, in conspired deprivation of Plaintiff's First, Fourth and Fourteenth U.S. Constitutional protected rights, violated federal statute **Title 18 U.S.C. Section 1001 (1) (2)** by knowingly and willfully, with intent to conceal, cover up for and device a material fact regarding the circumstances surrounding the criminal interference with Plaintiff's U.S. mail, issued a false and fraudulent statement of fact and/or reason for criminal violation. Plaintiff attests and can tangibly substantiate that Plaintiff had received U.S. mail addressed to Heather Paskiewicz, Heather Hoffman-Paskiewicz & Kevin C. Paskiewickz & Heather C. Paskiewickz at 19 Wood Duck Road, Hilton Head Island, South Carolina, on and between August of 2004, through then-present time of November and December of 2004.

203. Plaintiff herein incorporates all of the aforementioned paragraphs and attests that if the City of Kenosha Police Department and the Kenosha County Sheriff's Department had followed proper policy and procedure in October of 2002, and thereafter relative to Plaintiff's verbal and written concerns pertinent to overt predicate acts of civil and criminal harassment possibly attributable to members of the Kenosha County administration, including Kenosha County Executive Allan Kehl, and/or referred for investigation to the appropriate authoritative body, based on Plaintiff's allegations of potential intrusive violations of personal privacy and communication due to probable high stakes legal proceedings, any and all subsequent retaliatory actions and/or causes of actions in this legal suit and any other legal suits filed pertinent to this case on or after October 18, 2002, would not have been committed against Plaintiff, and therefore, no further financial damage and injury, including personal and bodily injury, due to the totality and severity of the overt predicate actions taken against Plaintiff on or before October of 2002, through present time of January of 2008, in conspired deprivation of Plaintiff's U.S. Constitutional protected rights, would have been initiated, implemented and taken against Plaintiff, and the causation of further harm and injury.

204. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff has suffered severe personal and bodily injury due to the intentional infliction of emotional distress associated with being a victim of a crime, with continuous denial of the due course of justice and enforcement and protection of state and federal laws, as provided under the Wisconsin State Constitution and the United States Constitution.

205. Plaintiff herein incorporates the aforementioned paragraphs and alleges, that this specific action, constitutes a violation of the Eighth Amendment, as it constitutes an action, under color of law, to inflict criminal punishment onto Plaintiff, through conspired deprivation of Plaintiff's First, Fourth, Fifth, Sixth and Fourteenth Amendment rights, by willful blindness and tacit compliance to criminal activity and federal offenses, of which includes interference with a federally protected right, in violation of state and federal statutes, with intent to defraud and deprive Plaintiff of the intangible right to honest services, through infliction of financial damage and injury, including bodily injury, in conspired deprivation of Plaintiff's substantive and procedural right to due process and equal protection of the laws prior to deprivation of life, liberty and property, including the right to privacy, as afforded to Plaintiff under the Fourth Amendment.

206. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict financial damage and injury, including bodily injury, to Plaintiff involved the use of the wires to advance, conceal, perpetuate or further the fraudulent scheme based on a material representation and/or misrepresentation, this action constitutes a violation of Title 18 U.S.C. Section 1343.

207. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict financial damage and injury, including bodily injury, to Plaintiff involved the use of the U.S. mail to plan, implement, advance, conceal and/or execute in furtherance of fraudulent scheme, this action constitutes a violation of Title 18 U.S.C. Section 1341.

208. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action in furtherance of fraudulent scheme and/or objective involved the use and/or financial transaction of a federally insured financial institution, this action constitutes a violation of Title 18 U.S.C. Section 1344 (2).

## COUNT FOURTEEN

209. Plaintiff herein incorporates the aforementioned paragraphs and attests that Family Court Commissioner James Fitzgerald, acting outside of his official capacity as a judicial officer of the court, used his family courtroom and official proceeding on May 5, 2005, in furtherance of fraudulent scheme to inflict financial damage and injury to Plaintiff, fully cognizant of the fact that

the issue before his court involved the overt predicate commission of a criminal/federal offense of adverse interference with Plaintiff's U.S. mail, (American TV & Appliances – acct #6587), in violation of state and federal laws, and in conspired deprivation of Plaintiff's First, Fourth, Eighth and Fourteenth U.S. Constitutional protected rights.

210. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Family Court Commissioner James Fitzgerald violated Wisconsin State Statute 757.22 on May 5, 2005, acting in furtherance of fraudulent scheme to defraud Plaintiff of her financial resources and property to further inflict retaliatory damage and injury to Plaintiff, including bodily injury, due to intentional infliction of emotional distress, in conspired deprivation of U.S. Constitutional protected rights of the First, Fourth and Fourteenth Amendments, through prejudicial abuse and misuse of judicial authority and family court room proceeding by providing legal counsel, advice and answering for Kevin Paskiewicz in a legal matter before his courtroom on May 5, 2005, as reflected in court transcripts of May 5, 2005, (page 13, lines 20, 23, 25 & page 14, lines 1-4) thereby, inflicting further financial injury of $1,418.59.

211. Plaintiff herein incorporates the aforementioned paragraphs and attests that Family Court Commissioner Fitzgerald, in violation of Wisconsin State Statute 757.22 declared how he might potentially rule on an issue not yet before his court, but, at the time, it was assumed would come before his court room at a later date, without all the pertinent facts before him on May 5, 2005, as reflected in court transcripts of May 5, 2005 (pages 15 &16).

212. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict financial damage and injury, including bodily injury, to Plaintiff involved the use of the wires to advance, conceal, perpetuate or further the fraudulent scheme based on a material representation and/or misrepresentation, this action constitutes a violation of **Title 18 U.S.C. Section 1343**.

213. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict financial damage and injury, including bodily injury, to Plaintiff involved the use of the U.S. mail to plan, implement, advance, conceal and/or execute in furtherance of fraudulent scheme, this action constitutes a violation of **Title 18 U.S.C. Section 1341**.

214. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action in furtherance of fraudulent scheme and/or objective involved the use and/or financial transaction of a federally insured financial institution, this action constitutes a violation of **Title 18 U.S.C. Section 1344 (2)**.

215. Plaintiff herein incorporates the aforementioned paragraphs and alleges, that this specific action, constitutes a violation of the Eighth Amendment, as it constitutes an action, under color of law, to inflict criminal punishment onto Plaintiff, through conspired deprivation of Plaintiff's First, Fourth, Fifth, Sixth and Fourteenth Amendment rights, by willful blindness and tacit compliance to criminal activity constituting federal offenses, including interference with a federally protected activity (Title 18 U.S.C. Section 245) in violation of state and federal statutes, with intent to defraud and deprive Plaintiff of the intangible right to honest services, through infliction of financial damage and injury, including bodily injury, in conspired deprivation of Plaintiff's substantive and procedural right to due process and equal protection of the laws prior to deprivation of life, liberty and property.

216. Plaintiff herein incorporates all of the aforementioned paragraphs and attests that if the City of Kenosha Police Department and the Kenosha County Sheriff's Department had followed proper policy and procedure in October of 2002, and thereafter, relative to Plaintiff's verbal and written concerns pertinent to overt predicate acts of civil and criminal harassment possibly attributable to members of the Kenosha County administration, including Kenosha County Executive Allan Kehl, and/or referred for investigation to the appropriate authoritative body, based on Plaintiff's allegations of potential intrusive violations of personal privacy and communication due to probable high stakes legal proceedings, any and all subsequent retaliatory actions and/or causes of actions in this legal suit and any other legal suits filed pertinent to this case on or after October 18, 2002, would not have been committed against Plaintiff, and therefore, no further financial damage and injury, including personal and bodily injury, due to the totality and severity of the overt predicate actions taken against Plaintiff on or before October of 2002, through present time of January of 2008, in conspired deprivation of Plaintiff's U.S. Constitutional protected rights, would have been planned, initiated, implemented and executed against Plaintiff, and the causation of further and subsequent harm and injury.

## COUNT FIFTEEN

217. Plaintiff herein incorporates all of the aforementioned paragraphs and alleges, due to the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, constituting an ongoing, continued pattern of overt predicate action to inflict financial damage and injury to plaintiff, including bodily injury, due to intentional infliction of emotional distress, under color of law, in conspired deprivation of U.S. Constitutional protected rights, that further criminal action was initiated and taken in furtherance of fraudulent scheme of association in fact, across state lines, on or before January of 2005, through then-present time of July of 2005, to financially defraud Plaintiff of her business and property through adverse interference with Plaintiff's business and contractual relations concerning relocation of moving/transportation of merchandise, home

furnishings and personal belongings via Otto Nelson & Sons/Agents for United Van Lines, 6203 – 28th Avenue, Kenosha, Wisconsin, to Plantation Self Storage, 1110 Fording Island Road, Bluffton, South Carolina.

218. Plaintiff herein incorporates the aforementioned paragraphs and alleges, due to the totality of circumstances to date, from October of 2002, through present time of January of 2008, constituting ongoing, continuity and similarity of pattern, involving two or more overt predicate acts, across state lines, that this specific action and/or conduct was taken with intent, purpose and causation to knowingly and willingly cause financial and tangible property damage to Plaintiff's property, pursuant to Title 18 U.S.C. Section 1513 (b) (2) (e), through fraudulent deceit and intentional misrepresentation of facts.

219. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Roger Gename, Otto Nelson & Sons/Agents for United Van Lines, conducted a walk through and took inventory of Plaintiff's home furnishings and belongings of then property at 4705-67th Place, Kenosha, Wisconsin, in January of 2005. Plaintiff was given an estimate of $6,509.26 for an approximate shipping weight of 10,563.

220. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff contacted this mover, more specifically, Erica Beiser, Relocation Coordinator, Otto Nelson & Sons/Agent for United Van Lines, Kenosha, Wisconsin, on June 30, 2005, via interstate telephone call from Hilton Head Island, South Carolina, to Kenosha, Wisconsin, and hired their services for interstate hauling/moving of Plaintiff's home furnishings from then-property at 4705 – 67th Place, Kenosha, Wisconsin, to Plantation Self Storage, 1110 Fording Island Road, Bluffton, South Carolina. Ms. Beiser was the point of contact for entire move. Plaintiff informed Erica Beiser that all furnishings were going into a storage unit. Plaintiff was informed by Ms. Beiser, based on total estimated weight of furnishings at 10,563, that Plaintiff should reserve and/or rent a storage unit space of 10 X 20.

221. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff reserved and paid for a 10 X 25 storage unit at Plantation Self Storage, 1110 Fording Island Road, Bluffton, South Carolina, on July 12, 2005.

222. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff's furnishings were delivered via Chris Hartl, U.S. Department of Transportation #077949 on July 21, 2005, to Plantation Self Storage. Total weight was 8920. Storage unit space of 10 X 25 was grossly insufficient for furnishings; therefore, Plaintiff's property received irreparable damage.

223. Plaintiff herein incorporates the aforementioned paragraphs and alleges, that Otto Nelson & Sons conspired and/or co-conspired to inflict damage to Plaintiff's property through fraudulent information and/or intentional malicious misrepresentation of facts, of which a relocation coordinator would have known to inflict tangible damage to property. Rental unit space was grossly insufficient for merchandise; however, Plaintiff did not have the time or the resources to call around and/or inquire about alternative storage once movers arrived with merchandise on July 21, 2005. As a direct causation of this act, Plaintiff's merchandise and/or home furnishings received significant damage.

224. Plaintiff herein incorporates the aforementioned paragraphs and attests that this specific action, the aforementioned causes of action, and the subsequent causes of action, inclusive of this legal suit, would not have been further initiated, implemented and/or executed in furtherance of retaliatory scheme against Plaintiff, if not for the failure and neglect and willful blindness of the City of Kenosha Police Department and the Kenosha County Sheriff's Department to take action to take a report, investigate and/or refer for investigation to the appropriate authoritative body in October of 2002, and thereafter, any and all of Plaintiff's allegations specific to these acts. The totality and entirety of the deliberate neglect to keep Plaintiff and her family from future harms, constitutes a deprivation of life, liberty and property minus due process and equal protection of the laws, under color of state law.

225. Plaintiff herein incorporates the aforementioned paragraphs and attests that Plaintiff received damage to her personal, tangible property of at least $100,000 of replacement cost of furnishings, including damage of irreplaceable family heirlooms.

226. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict damage and injury to Plaintiff, including bodily injury, involved the use of the wires to advance, conceal, perpetuate or further the fraudulent scheme based on a material representation and/or misrepresentation, this action constitutes a violation of **Title 18 U.S.C. Section 1343.**

227. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict damage and injury to Plaintiff involved the use of the U.S. mail to plan, implement, advance, conceal and/or execute in furtherance of fraudulent scheme, this action constitutes a violation of **Title 18 U.S.C. Section 1341**.

228. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action in furtherance of fraudulent scheme and/or objective involved the use and/or financial transaction of a federally insured financial institution, this action constitutes a violation of **Title 18 U.S.C. Section 1344 (2)**.

## COUNT SIXTEEN

229. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, that adverse action has been taken, under false pretenses and/or misconstrued or contrived misinformation, under color of state law, by local and state agencies of which receive federal funding, and by judicial and public officers of the court, to intentionally and adversely interfere with primary custodial parent's, Plaintiff's, Heather C. Hoffman, U.S. Constitutional fundamental, protected right to provide for the care and management of her children, as afforded to Plaintiff under the First and Fourteenth Amendments.

230. Plaintiff herein incorporates the aforementioned paragraphs and affirms that Plaintiff filed a Custodial Parent's Application for Child Support Services with the South Carolina Department of Social Services, Child Support Enforcement Division, Columbia, South Carolina, on October 5, 2005, to enforce non-custodial parent's responsibilities and obligations to his then-two minor children, pursuant to court orders of January 23, 2004, and June 24, 2004, and state and federal laws. At the time of Plaintiff's filing, non-custodial parent was in contempt of court for failure to follow and adhere to court specified orders.

231. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff was told by the State of South Carolina Department of Social Services, Child Support Enforcement Division, hereby referred to as "CSED" that it would take ninety days to process the application.

232. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff contacted CSED on January 3, 2006, pertinent to the filing of Plaintiff's application on October 5, 2005. Plaintiff was given a case number of 0664529 and advised that Pharmala Freeman, Child Support Enforcement Specialist, Child Support Enforcement Division, Charleston Region III, Post Office Box 150012, Charleston, South Carolina, had been assigned to her case.

233. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff left numerous voice mail messages for Ms. Freeman on and between January 4-19, 2006, and on Plaintiff's last message to Ms. Freeman, on and between January 4-19, 2006, conveyed to Ms. Freeman that Plaintiff wanted to schedule a meeting with her on January 25, 2006, to provide any and all subsequent documentation necessary to enforce non-custodial parent's, Kevin Paskiewicz's, parental responsibilities and obligations, especially pertinent to Mr. Paskiewicz's employment status, and, if employed, availability of health insurance coverage through his employer, and reimbursement for uninsured medical expenditures from February 19, 2004, through then-present time of January of 2005. Plaintiff resides in Hilton Head Island, South Carolina, and had

an official appointment scheduled on January 25, 2006, in Charleston, South Carolina, with State Farm Insurance specific to vandalism on Plaintiff's 1997 Mercedes-Benz E-320.

234. Plaintiff herein incorporates the aforementioned paragraphs and attests that Ms. Freeman returned Plaintiff's call on January 20, 2006, and told Plaintiff that she was unavailable to meet with Plaintiff on January 25, 2006, because she was scheduled to be in court. Plaintiff offered to reschedule her appointment with State Farm Insurance to accommodate Ms. Freeman's schedule. Plaintiff was advised by Ms. Freeman that it is not proper policy and procedure for case workers to schedule appointments with clients. Plaintiff was told CSED operates on an informal, walk- in, first come, first served basis. Plaintiff was told that the modification orders had been sent to the Kenosha County Child Support Enforcement Agency and Kenosha Family Court, Kenosha, Wisconsin, and no further information was needed from Plaintiff. Plaintiff requested that a copy of the modification orders be sent to her. In response to Plaintiff's request, Ms. Freeman told Plaintiff that she was unable to provide a copy of the orders to Plaintiff.

235. Plaintiff herein incorporates the aforementioned paragraphs and affirms that on January 25, 2006, Plaintiff went to CSED in North Charleston, South Carolina. Plaintiff was told that her file was complete, modification orders and paperwork had been sent to Kenosha County Child Support Enforcement Agency and no further information was needed from Plaintiff for enforcement of rights. Plaintiff, again, was refused a copy of the orders sent to Kenosha, Wisconsin. Plaintiff herein incorporates the aforementioned paragraphs and alleges that she disclosed to CSED on January 25, 2006, and in prior conversation to Ms. Freeman on January 20, 2006, Plaintiff's concerns specific to possible and/or probable intentional retaliatory and discriminatory practices by Kenosha County, under color of law, specific to this matter since Plaintiff had encountered adverse action and interference by Kenosha County, attributable to and inclusive of the aforementioned paragraphs of 1-235, of this legal document, of which had included a continued pattern of adverse, retaliatory action and abuse of authoritative power by Kenosha County agencies, the judiciary, public officers of the Kenosha Circuit Court and the Kenosha Family Court, more specifically, Family Court Commissioner James Fitzgerald, with issues concerning Plaintiff's then two minor children.

236. Plaintiff herein incorporates the aforementioned paragraphs and alleges that on and between the time of January of 25, 2006, through then-present time of March 27, 2006, Plaintiff left numerous messages for Ms. Freeman for case update and status inquiry, including Mr. Paskiewicz's status of employment, and, if employed, the status of the Medical Support Order Notification sent to his employer.

237. Plaintiff herein incorporates the aforementioned paragraphs and alleges that on March 27, 2006, Phalarma Freeman notified Plaintiff, via a telephone call, that a new caseworker, Sorona Jenkins, had been assigned to Plaintiff's case. Ms. Freeman stated, to date, no response had been received from Kenosha County relative to orders sent in January of 2006.

238. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Sorona Jenkins returned Plaintiff's call on April 4, 2006. Ms. Jenkins stated to Plaintiff that she had not yet reviewed Plaintiff's case file, no contact had been initiated or made with Kenosha County, Wisconsin, and Ms. Jenkins did not see the need to meet with Plaintiff for further information. Per Ms. Jenkins, no additional information was needed from Plaintiff to enforce orders.

239. Plaintiff herein incorporates the aforementioned paragraphs and alleges that following Plaintiff's telephone conversation on April 4, 2006, with Ms. Jenkins, Plaintiff suspected intentional misinformation and fraudulent deceit to impede, hinder, obstruct and defeat Plaintiff's First and Fourteenth Amendment rights to provide for the care and management of her children, from CSED, more specifically, both Ms. Freeman and Ms. Jenkins, based on the fact that CSED did not have all the information necessary to move forward with enforcement of Kevin Paskiewicz's parental responsibilities and obligations since it had not been requested of Plaintiff, nor had Plaintiff provided to CSED, any comprehensive or conclusive information pertinent to monetary figures encompassing 50% share of monthly uninsured health insurance costs from June of 2004, through then present time of April of 2006, and/or 50% of the cost of uninsured medical expenditures from February of 2004, through then-present time of April of 2006.

240. Plaintiff herein incorporates the aforementioned paragraphs, and alleges, that through numerous phone conversations on and between January of 2006, through April of 2006, with Ms. Freeman and Ms. Jenkins, Plaintiff suspected that Ms. Freeman and Ms. Jenkins, were deliberately using their administrative power, under color of law, to adversely interfere with Plaintiff's fundamental protected right to provide for the care and management of her two children, as afforded to her under the First and Fourteenth Amendments, of holding Kevin Paskiewicz lawfully, legally and financially responsible for his parental responsibilities and obligations through deliberate stall tactics, miscommunication, misinformation, false representation and misrepresentation of stated facts, of which resulted in further financial damage and injury to Plaintiff, including Plaintiff's own filing of cause of action on April 25, 2006, to expedite the process, and subsequent travel expenses to Kenosha, Wisconsin, for hearing of June 14, 2006, to enforce non-custodial parent's responsibilities and obligations in a family court of law, including significant contempt of court issues.

241. Plaintiff herein incorporates the aforementioned paragraphs and alleges that, based on the totality of circumstances to date from October of 2002, through present time of January of 2008, that both CSED, representative of Ms. Freeman and Ms. Jenkins, were working in concert with the Kenosha County Child Support Enforcement Agency and the Kenosha Family Court, to adversely affect Plaintiff's lawfully and legally holding Mr. Paskiewicz responsible for his parental obligations through stall tactics and misinformation and intentional miscommunication and omissions of pertinent facts relevant to the handling and enforcement of modification orders from CSED.

242. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff contacted and left a message on Darlene Sandberg's voice mail, Supervisor, Child Support Enforcement Agency, Kenosha, Wisconsin, on April 10, 2006, following Plaintiff's conversation on April 10, 2006, with Sorona Jenkins. Ms. Jenkins had stated to Plaintiff that Kenosha County was deliberately stalling in the handling of the modification orders from CSED.

243. Plaintiff herein incorporates the aforementioned paragraphs and alleges that on April 11, 2006, Carol Brooks, caseworker, Child Support Enforcement Agency, Kenosha, Wisconsin, contacted Plaintiff via telephone and conveyed that Plaintiff needed to take Kevin Paskiewicz back to family court on issues, more specifically, contempt of court issues, including health insurance and reimbursement of 50% of uninsured accrued medical expenditures from February of 2004, through then present time of April of 2006.

244. Plaintiff herein incorporates the aforementioned paragraphs and alleges that on April 11, 2006, Plaintiff contacted the Kenosha County Courthouse, Kenosha, Wisconsin, for inquiry specific to proper policy and procedure of request that a judge preside over Plaintiff's hearing rather than Family Court Commissioner James Fitzgerald.

245. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff sent a letter of request for assignment of judge to preside over the post-judgement hearing regarding Case No. 03FA834 to the Honorable Chief Justice Mary Wagner, Kenosha Circuit Court Branch Six on April 20, 2006.

246. Plaintiff herein incorporates the aforementioned paragraphs and attests that based on the misinformation and miscommunication being provided to Plaintiff by both the South Carolina Department of Child Support Enforcement and the Kenosha County Child Support Enforcement Agency, that Plaintiff decided it was in the best interest of Plaintiff's children to circumvent both agencies and take Kevin Paskiewicz back to Kenosha Family Court.

247. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff sent her Order to Show Cause dated April 25, 2006, via certified mail to the Kenosha County Clerk of Court's Office, Kenosha County Courthouse, 912 – 56th Street, Kenosha, Wisconsin, on April 25, 2006. Certified mail was received, signed and dated by the Kenosha County Clerk of Court's Office on April 28, 2006. Pursuant to Wisconsin State Statute CR 05-11, Plaintiff had included a copy of the letter sent to the Honorable Chief Justice Mary Wagner, Kenosha Circuit Court Branch Six, on April 20, 2006, requesting that a judge be assigned to preside over the post-judgment hearing regarding Case No. 03FA834.

248. Plaintiff herein incorporates the aforementioned paragraphs and alleges that on May 8, 2006, Plaintiff received her legal notification of Order To Show Cause from the State of Wisconsin, Circuit Court Family Branch, Kenosha County, Wisconsin, in the U.S. mail. The date of hearing was set for June 14, 2006; however, the time of the hearing was omitted from the legal document.

249. Plaintiff herein incorporates the aforementioned paragraphs and alleges that on May 8, 2006, Plaintiff contacted and spoke with Sue Imhoff, Clerk for Chief Justice Mary Wagner, to determine the time of hearing and request a revised copy of the legal document be mailed and/or faxed to Plaintiff with time inclusion.

250. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Sue Imhoff refused to mail and/or fax to Plaintiff a new and/or revised Order to Show Cause with the time of hearing included. Ms. Imhoff stated that the hearing of June 14, 2006, had been cancelled due to Respondent, Kevin Paskiewicz, signing an agreement outside of court. Plaintiff was unaware of any such agreement and/or any of the terms and/or specifications that would have been agreed upon by Respondent since he did not possess the information in which to base an agreement on. Plaintiff requested Ms. Imhoff fax to her a copy of said agreement.

251. Plaintiff herein incorporates the aforementioned paragraphs and alleges that on May 9, 2006, Plaintiff sent via e-mail, a request of time of hearing of June 14, 2006, to Kenosha County Clerk of Court Gail Gentz. Ms. Gentz, an elected public official, provided an unacceptable, unprofessional response to Plaintiff's request. Per Ms. Gentz, "the time of the hearing is 10:30 a.m., if you can't read it, then write it in yourself."

252. Plaintiff herein incorporates the aforementioned paragraphs and alleges that, again, on May 9, 2006, Ms. Imhoff refused to fax a revised copy of the legal document of Order to Show Cause with time of hearing of June 14, 2006 included; however, she faxed to Plaintiff a copy of the legal document from the State of Wisconsin dismissing the Order to Show Cause filed April 11, 2006, without prejudice due to respondent signing an agreement outside of court. The order was signed and dated by Family Court Commissioner James Fitzgerald on May 4, 2006. There were no specifications and/or terms specific to this agreement and document filed 04/11/06; therefore, there was no meeting of the minds between both parties, and it bore

absolutely no legal relevance on the cancellation of my Cause of Action filed May 1, 2006, and scheduled for June 14, 2006, with time omitted.

253. Plaintiff herein incorporates the aforementioned paragraphs, and alleges, that in order for an agreement to be reached, there needs to be a meeting of the minds between both parties. Since Mr. Paskiewicz did not possess all the critical information, including total itemization of health and uninsured medical costs, he had no information in which to base an agreement on. And, if Mr. Paskiewicz had blindly agreed to all Plaintiff's legal requests, there would have been no rebuttal in family court on June 14, 2006, pertinent to these issues from Mr. Paskiewicz.

254. Plaintiff herein incorporates the aforementioned paragraphs, and alleges, based on the totality of circumstances to date, that judicial officers of the court, and those entrusted with enforcement of court obligated responsibilities of non-custodial parents, used county agencies of which receive federal funding from the federal government, and a judicial branch of government, across state lines, to deprive Plaintiff of her fundamentally protected right to provide for the care and management of her then-two minor children, by attempting to impede, hinder and obstruct her U.S. Constitutional fundamental protected right to access the family court system for enforcement of non-custodial parental obligations, especially when non-custodial parent is in contempt of court for failure to provide for his children.

255. Plaintiff herein incorporates the aforementioned paragraphs and alleges that if there was a lawful, legal basis, under color of law, for officers of the court to take overt predicate action with intent and purpose to impede, hinder and obstruct Plaintiff's legal rights, this action was taken, under false pretenses, in deprivation of Plaintiff's First and Fourteenth Amendment rights, as afforded to Plaintiff under the U.S. Constitution, prior to deprivation of life, liberty and property.

256. Plaintiff herein incorporates the aforementioned paragraphs and alleges that through numerous phone conversations with Sue Imhoff and the Kenosha Family Court, on and between May 8 – 10, 2006, Plaintiff received conflicting information as to whether or not there was a hearing scheduled for June 14, 2006, in Judge Mary Wagner's Courtroom between Plaintiff and Respondent, since Plaintiff did not have a factual, legal document in her possession.

257. Plaintiff herein incorporates the aforementioned paragraphs, and attests, that based on the content of her conversations with Sue Imhoff and officers of the court, on and between May 8 – 10, 2006, that judicial officers, in deprivation of Plaintiff's U.S. Constitutional protected First and Fourteenth Amendment rights, were attempting to block her access to the family court, including deliberate, intentional failure to provide Plaintiff with a lawful, legal binding document relative to time of court hearing of June 14, 2006, through fraudulent misrepresentation of facts.

258. Plaintiff herein incorporates the aforementioned paragraphs, and alleges, that to ensure that Plaintiff had a time of hearing scheduled in Judge Mary Wagner's Courtroom on June 14, 2006, prior to proceeding with travel arrangements to Wisconsin, Plaintiff faxed a copy of the Order to Show Cause to her friend, Michelle Anderson, in Kenosha, Wisconsin, on May 9, 2006, to take to the Kenosha County Courthouse for time inclusion on legal document. Without a time of hearing documented on Order to Show Cause relative to File No. #03FA834, in relation to hearing of June 14, 2006, in Judge Mary Wagner's Courtroom, Plaintiff did not possess a lawful, legal binding document.

259. Plaintiff herein incorporates the aforementioned paragraphs and alleges that on May 10, 2006, Michelle Anderson faxed to Plaintiff a revised copy of the Order to Show Cause with time inclusion of 10:30 a.m. on June 14, 2006.

260. Plaintiff herein incorporates the aforementioned paragraphs, and attests, that in front of two witnesses, Kevin Paskiewicz verbally attacked Plaintiff in the Kenosha County Courthouse prior to court hearing of June 14, 2006, based on a phone conversation he had with Carol Brooks, Child Support Enforcement Agency, Kenosha, Wisconsin, relative to both the State of South Carolina and the State of Wisconsin, being "fed" up with Plaintiff for circumventing both states and taking Mr. Paskiewicz back to family court. Acting under color of state law, Ms. Brooks deliberately misused and abused her authoritative power through intentional falsification of information and facts to slander Plaintiff to Mr. Paskiewicz with malicious intent and purpose to incite, provoke and create an altercation between Plaintiff and Mr. Paskiewicz.

261. Plaintiff herein incorporates the aforementioned paragraphs and attests that administrators of Kenosha County government, having worked with Plaintiff for five and a half years, were fully cognizant of Mr. Paskiewicz's violent outbursts and aggressive behavior based on Plaintiff's conversations with Kenosha County Executive Allan Kehl and co-workers. Furthermore, it was the "talk" of the Kenosha County Administration Building in October of 2002, when Mr. Paskiewicz inflicted substantial exterior damage to Plaintiff's new vehicle in a violent outburst.

262. Plaintiff herein incorporates the aforementioned paragraphs, and attests, that Plaintiff has in her possession written correspondence from Mr. Paskiewicz attesting to the fact that he was contacted by the Kenosha County Child Support Enforcement Agency on June 15, 2006, to apologize for the results and findings of the hearing of June 14, 2006, and to once, again, under color of law, slander Plaintiff by alleging that Plaintiff contacted the Kenosha County Courthouse on June 15, 2006, to dispute the court ordered amount. This is a false and fraudulent statement by an employee acting under color of law. This malicious lie, by a state actor, constitutes a higher degree of slander since this employee is using her administrative position to inflict damage and injury to Plaintiff and her children.

263. Plaintiff herein incorporates the aforementioned paragraphs, and alleges, based on the totality of circumstances to date, that both the State of South Carolina Department of Social Services, Child Support Enforcement Division, North Charleston, South Carolina, and the State of Wisconsin, Child Support Enforcement Agency, Kenosha, Wisconsin, through an abuse of power, under color of law, used their authoritative positions, to adversely affect Plaintiff's right to hold non-custodial parent lawfully and legally responsible for his court ordered obligations to his children, and, with malicious intent, knowingly and willfully aided and abetted a felon, in violation of 18 U.S.C. Section 228 (a) (1) (3).

264. Plaintiff herein incorporates the aforementioned paragraphs, and attests, that Plaintiff, through written correspondence dated August 10, 2006, appraised the following parties of her complaint in reference to the handling of and retaliatory, adverse action taken by the above referenced parties, in conspired deprivation of U.S. Constitutional rights, under color of law, with specific intent to hinder, impede and obstruct the due course of the administration of justice through adverse interference with Plaintiff's fundamental, federally protected right to provide for the care and management of her then two minor children: The Honorable Chief Justice Mary Wagner, Kenosha Circuit Court Branch 6, Kenosha, Wisconsin; Joyce A. Thomas, Regional Administrator of Region 5, Administration for Children and Families, Chicago Regional Office, Chicago, Illinois; Carlis V. Williams, Regional Administrator of Region 4, Administration for Children and Families, Atlanta Regional Office, Atlanta, Georgia; Michael Leavitt, Secretary, U.S. Department of Health and Human Services; Phalarma L. Freeman, Child Support Specialist, CSEA, North Charleston, South Carolina; Sorona Jenkins, Child Support Specialist, CSEA, North Charleston, South Carolina; Carol Brooks, Caseworker, CSEA, Kenosha, Wisconsin; and Darlene Sandberg, Caseworker, CSEA, Kenosha, Wisconsin.

265. Plaintiff herein incorporates the aforementioned paragraphs, and alleges, that Plaintiff and her two children have sustained irreparable damage and injury, including personal and bodily injury, directly attributable to this specific cause of action, under color of law, under conspired deprivation of U.S. Constitutional rights, by abuse of authoritative power and fraudulent deceit in association with county agencies, of which receive federal funding, of engaging in adverse action to intentionally and maliciously interfere with Plaintiff's fundamental, protected activity, pursuant to 18 U.S.C. Section 245 (2) (1) (E) (2) (B) (4) (A), to provide for the care and management of her two children, in deprivation of the First and Fourteenth Amendments. Plaintiff has ongoing lawful, legal issues with Kevin Paskiewicz of which Plaintiff will continuously need to go back to family court. Plaintiff has absolutely no trust and/or confidence in either agency, since both intentionally and maliciously lied to and provided false and misleading information to and about Plaintiff to further a retaliatory vendetta of which adversely and detrimentally affected two innocent children's lives.

266. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict damage and injury to Plaintiff involved the use of the wires to advance, conceal, perpetuate or further the fraudulent scheme based on a material representation and/or misrepresentation, this action constitutes a violation of Title 18 U.S.C. Section 1343.

267. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action taken in furtherance of fraudulent scheme and/or objective to inflict damage and injury to Plaintiff involved the use of the U.S. mail to plan, implement, advance, conceal and/or execute in furtherance of fraudulent scheme, this action constitutes a violation of Title 18 U.S.C. Section 1341.

268. Plaintiff herein incorporates the aforementioned paragraphs and alleges that since this overt predicate action in furtherance of fraudulent scheme and/or objective involved the use and/or financial transaction of a federally insured financial institution, this action constitutes a violation of Title 18 U.S.C. Section 1344 (2).

269. Plaintiff herein incorporates all of the aforementioned paragraphs and attests that if the City of Kenosha Police Department and the Kenosha County Sheriff's Department had followed proper policy and procedure in October of 2002, and thereafter, relative to Plaintiff's verbal and written concerns pertinent to overt predicate acts of civil and criminal harassment possibly attributable to members of the Kenosha County administration, including Kenosha County Executive Allan Kehl, and/or referred for investigation to the appropriate authoritative body, based on Plaintiff's allegations of potential intrusive violations of personal privacy and communication due to probable high stakes legal proceedings, any and all subsequent retaliatory actions and/or causes of actions in this legal suit and any other legal suits filed pertinent to this case on or after October 18, 2002, would not have been committed against Plaintiff, and therefore, no further financial damage and injury, including personal and bodily injury, due to the totality and severity of the overt predicate actions taken against Plaintiff on or before October of 2002, through present time of January of 2008, in conspired deprivation of Plaintiff's U.S. Constitutional protected rights, would have been initiated, implemented and taken against Plaintiff, and the causation of further harm and injury.

270. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date on or before October of 2002, through present time of January of 2008, that aforementioned defendants in paragraphs 2-16 & 22, including Julie Boynton Paskiewicz, Plaintiff's ex-husband's wife, working in concert and in association with one or more of the aforementioned defendants in furtherance of retaliatory scheme, under color of law, in conspired deprivation of U.S. Constitutional protected rights, were significant contributing factors to the harassment in this specific action, and possibly inclusive of all the aforementioned and subsequent causes of action encompassed in this federal lawsuit and any and all future federal lawsuits filed pertinent to and in association to this

matter; however, Plaintiff has been continuously denied her right to procedural due process and equal protection, including a lawful, legal investigation by those entrusted with the authority, power and resources to investigate said activity, including issuance of subpoenas and legal records, etc.

## COUNT SEVENTEEN

271. Plaintiff herein incorporates the aforementioned paragraphs and alleges, based on the totality of circumstances to date, on or before October of 2002, through present time of January of 2008, with similar intent, purpose and causation of damage and injury to Plaintiff, that the aforementioned defendants, including "John Doe Defendants" took adverse, retaliatory employment action against Plaintiff through adverse interference with subsequent employment opportunities, across state lines, inclusive of the entirety and totality of this federal lawsuit and the federal lawsuit to be filed in the U.S. District Court of Charleston, South Carolina, to do irreparable damage and injury to Plaintiff's employment record, future employment opportunities, earning capacity, family matters, credit report, finances and intellectual competence and stability due to high stakes legalities involved.

272. Plaintiff herein incorporates the aforementioned paragraphs and alleges that Plaintiff has sustained three subsequent adverse employment actions directly attributable to Plaintiff's former employer, Kenosha County Government, Kenosha, Wisconsin, including: Christ Lutheran Church (September 20, 2004 - November 9, 2004), 829 William Hilton Parkway, Hilton Head Island, South Carolina; Belk Department Store #0534 (October 19, 2005 – November 5, 2005), 24 Shelter Cove Lane, Hilton Head Island, South Carolina; and A Shore Thing (March of 2007 – April 19, 2007), 32 Shelter Cove Lane, Hilton Head Island, South Carolina.

273. As a causation of the entirety of this cause of action, Plaintiff has sustained permanent damage and injury to Plaintiff's character, work record, employment history, future earning capacity, stability, etc. Plaintiff is a college graduate, and up until the initial adverse employment action, planned, initiated, implemented and executed on September 20, 2004, and subsequent employment actions thereafter through April 19, 2007, had an impeccable, unblemished employment history of excellent and/or good standing with twelve or more previous employers.

## COUNT EIGHTEEN

274. Plaintiff herein incorporates the aforementioned paragraphs and alleges that the totality and entirety of the information contained in this federal lawsuit, inclusive of any and all future and/or subsequent lawsuits filed in this matter, constitutes a violation of Plaintiff's Eighth Amendment right, as afforded under the United States Constitution of America, since Plaintiff has been deprived of her life, liberties and properties, in conspired deprivation of procedural and substantive due process and equal protection of the laws, under color of law, as afforded to Plaintiff under the

Fourteenth and Fifth Amendments, in deliberate, conspired deprivation of Plaintiff's Sixth Amendment right to legal counsel, while treating Plaintiff as a criminal and thereby, stripping her of her U.S. Constitutional rights as if Plaintiff has been charged, tried and convicted of a criminal crime, without hearing the charges and/or evidence against Plaintiff, and/or having the opportunity to answer the charges, and present evidence and witnesses on Plaintiff's behalf, prior to criminal conviction and full and public disclosure of sensitive information.

275. Plaintiff also alleges, that in all probability, based on high stakes legalities involved, that authoritative bodies, under color of law, with intent to cover up for and conceal their initial involvement and subsequent cover-up, on or before October of 2002, through present time of January of 2008, have taken the initiative and action to set Plaintiff up for future charges of criminal behavior through a controlled environment.

276. Plaintiff attests that the extreme mental anguish that Plaintiff has been subjected to from having to organize, prepare, write and ultimately present her own legal counsel in this United States District Court of Milwaukee, Wisconsin, due to intrusive violation of privacy and adverse interference in Plaintiff's life, including privileged communications, constitutes cruel and unusual punishment of a victim of crime by forcing Plaintiff to relive and continue to relive the horrific events of which have violated and inflicted irreparable damage and injury.

277. Plaintiff herein incorporates the aforementioned paragraphs of 1-277, to be inclusive of the entirety of the federal lawsuit filed in the U.S. District Court of Charleston, South Carolina, due to the direct relevance and correlation of the overt predicate retaliatory acts, across state lines, pertinent to and directly associated with this federal lawsuit filed in the U.S. District Court of Milwaukee, Wisconsin.

## RELIEF

278. I hereby pray that the United States District Court of Milwaukee, Wisconsin, will grant an injunctive relief to cease and desist the continued, open-ended pattern of criminal harassment and adverse interference in Plaintiff's person, property and business, including intrusive invasion of personal privacy to initiate, implement and execute said open-ended continuity of overt predicate actions. Plaintiff seeks compensatory damages in the amount of $50 million due to loss of wages, future employment opportunities, future earning capacity, severe mental distress and anguish, including infliction of bodily injury, due to the totality and entirety of the civil and criminal harassment that has been waged against Plaintiff for over five years, including the intrusive violation of privacy and desecration of Plaintiff's person, property and business, and current and future substantial health and medical expenditures, loss of privacy and, most importantly, loss of family relations. Plaintiff seeks $50 million for her two children for pain and suffering and adverse interference in issues directly concerning their lives and family affections.

279. The conspired, organized and overt predication actions that has been taken against Plaintiff, under color of law, of which has directly and significantly affected her two children, constitutes heinous and outrageous conduct of which exceeds the bounds of decency in a civilized society. If authoritative figures in the United States of America are allowed to retaliate and abuse and misuse their positions of power to punish and silence those whom stand up for themselves and others rights, without check and balance, our U.S. Constitution is worthless and not serving the purpose of which it was intended by our forefathers. For five years, on or before October of 2002, through present time of January of 2008, Plaintiff has been continuously denied her U.S. Constitutional rights while the perpetrators have organized, planned, initiated and implemented overt action against action against Plaintiff, through intrusive invasion of privacy of which shocks the conscious of any individual of whom trusts that their homes, vehicles, U.S. mail, and wire and electronics communications are confidential and private. Plaintiff has been so adversely affected by the exploitation and violation of her life and her children's lives, that Plaintiff applied for temporary disability from the U.S. Social Security Administration in June of 2007. The slander, defamation and public disclosure of private, confidential information, including falsified information, that Plaintiff has been subjected to, under the protection of color of law, is outrageous and Plaintiff seeks $100 million in punitive damages for malicious loss of life, liberty and property, most importantly, family relations.

280. Plaintiff prays, based on the totality and entirety of the evidence from October of 2002, through present time of January of 2008, that this U.S. District Court of Milwaukee, Wisconsin, will render a decision to force U.S. federal authorities to launch a criminal investigation pertinent to possible and/or probable foul play attributable to and inclusive of this federal lawsuit and any and all subsequent lawsuits filed pertinent to this matter, including possible attempted and/or homicide.

281. Since Plaintiff has sustained injuries and damages to her property and business directly attributable to overt predicate acts of racketeering, across state lines, by reason of a violation of Title 18 United States Code, Section 1962, per Title 18 United States Code, Section 1964 (c), Plaintiff is entitled to recover threefold the damages sustained.

**I declare under penalty of perjury, having been consistently denied my U.S. Constitutional rights to due process and equal protection of the laws, that the foregoing is true and correct to the best of my knowledge.**

Signed this _07_ day of _January_, 20_08_.

_Signature of Plaintiff_

My Commission Expires
July 24. 2012